**UNITED STATES of America, Appellee,**

v.

**Maurice J. CHAREST,
Defendant-Appellant.**

**No. 78–1524.**

United States Court of Appeals,
First Circuit.

Argued May 8, 1979.

Decided Aug. 1, 1979.

Michael Avery, Boston, Mass., by appointment of the Court, for defendant-appellant.

Joan C. Stanley, Asst. U. S. Atty., Boston, Mass., with whom Edward F. Harrington, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN, Chief Judge, BOWNES, Circuit Judge, MURRAY, Senior District Judge.*

BOWNES, Circuit Judge.

This is an appeal from a conviction for possession and receipt of a firearm, defendant having previously been convicted of a felony, in violation of 18 U.S.C. § 922(h)(1) and 18 U.S.C.App. § 1202(a)(1). The appeal focuses solely on the legality of the seizure at the home of defendant-appellant of the firearm on which the prosecution was based. Appellant attacks the warrant on a number of grounds. Since we find the warrant was invalid because the affidavit failed to supply a sufficient nexus between the

* Of the District of Massachusetts, sitting by designation.

firearm and defendant's premises, we treat only this issue.

The base point for a determination of whether there was probable cause for issuing a search warrant is *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), reaffirmed in *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). There must be a "substantial basis" for the magistrate, in this case the Assistant Clerk of the Second District Court of Bristol, Massachusetts, to conclude that evidence of the crime would be found at defendant's home. *Aguilar v. Texas, supra,* 378 U.S., at 111, 84 S.Ct. 1509 citing *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). The affidavit must contain facts or circumstances from which the magistrate can make such a determination. *Spinelli v. United States, supra,* 393 U.S., at 416, 89 S.Ct. 584. *Nathanson v. United States,* 290 U.S. 41, 47, 54 S.Ct. 11, 78 L.Ed. 159 (1933).

The essential facts here can be stated as follows. On April 3, 1977, Dennis Raimondi was found dead from gunshot wounds in his home in Somerset, Massachusetts. During the police investigation, one Robin Raposa was uncovered as a witness. She told the police that she had seen the murder and initially identified one John Lopes as the person who shot Raimondi. She later changed her story and identified defendant as the killer. Sergeant Francis McDonald of the Fall River, Massachusetts, Police Force obtained both an arrest warrant and a search warrant on April 19, 1977, for the defendant's premises at 84 Danforth Street, Fall River. The gun in question was taken from a bedroom closet shelf. The affidavit for the search warrant states:

> The property for which I seek the issuance of a search warrant is the following: (describe property as particularly as possible).
> 1- Handgun capable of firing a 38 calibre projectile.

Attached to the face page of the affidavit is the following statement:

> The following which leads me to believe that Maurice Charest was in possession of a hand gun and certain clothing on our [sic] about April 1, 1977. On April 3, 1977 the dead body of Dennis Raimondi was found inside a house on Wilbur Avenue Somerset Mass. Subsequent investigation reveals the cause of death to be multiple gunshot wounds to the body of Dennis Raimondi. On April 15 I spoke with a reliable confidential informant, in New Bedford Massachusetts who I have known for the past 5 years and who has given me information that has led to the arrest and conviction of Diane Dixon for murder. My informant told me that on April 1, 1977 it was at the home of Dennis "Danny" Raimondi which is located at 1033 Wilbur Ave. Somerset Massachusetts. My informant told me that at about 10:00 PM, Ramondi's telephone rang and he answered it. My informant heard Raimondi tell the party on the other end of the line to come over and shortly after he hung up. My informant further stated that shortly after that several males came in to Raimondi's house and entered it. That Raimondi approached the men and they began to talk. My informant recognized the men as they were known to it. They were identified by it as Robert Luiz, Richard A. Carreiro, Maurice Charest and Paul Barboza. My informant told me that Charest walked over to Raimondi and stated that "You may fuck around with other people but you are not going to fuck around with me." Then Charest asked how much money Raimondi had. Raimondi and Charest still argued while the other men were there near the door. My informant stated it saw a gun under the waist band area of Charest's pants. Charest then pushed Raimondi and they struggled and Charest had Raimondi in a bear hug. Then my informant stated it saw Charest back away from Raimondi and say, "They may take your fuckin shit but I'm not going to." And he shot Raimondi in the chest area then Charest continued to shoot Raimondi. My informant stated that it hid and then heard a car drive away and looked out of a window and saw an old beach-wagon with brown

wood drive away fast. Of my own personal knowledge I have recently seen Maurice Charest in a car matching this description.

■ There is nothing in the affidavit from which a factual finding could be made that the gun used in the shooting was probably located at defendant's premises. As a matter of fact, the affidavit is bare of any assertion that defendant lived at 84 Danforth Street. We will assume, however, that sufficient oral information was given to the magistrate for such a finding. We realize that a warrant must be read in a common sense fashion, *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965) and that the nexus between the objects to be seized and the premises searched do not have to rest on direct observation, but can be inferred from the type of crime, the nature of the items sought, the extent of an opportunity for concealment and normal inferences as to where a criminal would hide a handgun used in the commission of a murder. *United States v. Pheaster*, 544 F.2d 353, 373 (9th Cir. 1976), *cert. denied*, 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977).

■ Common sense tells us that it is unlikely that a murderer would hide in his own home a gun used to shoot someone.[1] If defendant shot Raimondi, as the affidavit states, one of the first things he would do would be to get rid of the gun. The handgun could easily have been disposed of permanently within a short time after the crime. It is not reasonable to infer that defendant drove from Somerset to Fall River and then casually placed a weapon which had fired more than one bullet into a man on the shelf in his bedroom closet. Ballistics is not only an accurate science, it is also well-known. We have been unable to find any case in which a search warrant was issued for a person's home on the sole basis that a handgun had been used by that person in the commission of the type of crime where the bullets used could be traced to

the gun.[2] The case that comes closest is *United States v. Bowers*, 534 F.2d 186 (9th Cir.), *cert. denied*, 429 U.S. 942, 97 S.Ct. 360, 50 L.Ed.2d 311 (1976), in which a warrant was issued for the defendant's premises on the basis of an affidavit that stated: that shell casings of Finnish, Yugoslavian and Winchester manufacture, crossbow bolts, a section of a newspaper, a pair of sun glasses, and an empty can of Budweiser beer were found at the scene where a park ranger was murdered; that the defendant had a crossbow in his possession about five months prior to the murder; and that the defendant had confessed the murder to the informant. In upholding the warrant, which was found invalid because of lack of nexus in the California state court, the Ninth Circuit quoted from *United States v. Damitz*, 495 F.2d 50, 55 (9th Cir. 1974), to the effect that the magistrate must only have reasonable grounds to believe that the items are at the premises to be searched. The court found it logical to infer that some of the items sought would probably be at defendant's premises. Even if we accept *Bowers* as good precedent, and as to this we have some doubt, it is different from our situation where the affidavit states that the property for which the issuance of a search warrant is sought is a single handgun. In *United States v. Flanagan*, 423 F.2d 745, 747 (5th Cir. 1970), the Fifth Circuit stated:

> The statement, even if reliable, that a named person who is a known felon has committed a burglary, plus possession by the suspect of some of the proceeds when arrested, does not without more authorize the issuance of a warrant to search the residence of the accused miles away.

*Flanagan* was relied on and the above holding quoted in *United States v. Gramlich*, 551 F.2d 1359, 1362 (5th Cir. 1977).

This case is distinguishable from *United States v. Melvin*, 596 F.2d 492 (1st Cir. 1979), in which a warrant was issued based on the reasonable inference that materials

---

1. The handgun seized at defendant's home was not the murder weapon.

2. The Assistant United States Attorney stated at oral argument that she had been unable to find any such case.

**1018**

for making a dynamite bomb would probably be found in defendant's home. The affidavit stated that bomb squad officers believed that the type of bomb used would have to be put together in a workshop of some sort, as opposed to a vehicle, "because of the type of tools and materials needed to assemble the bomb." *Id.* at 495. Although recognizing that it was a close question, the majority held that this established a sufficient nexus between the objects sought and defendant's home. *Melvin*, however, is not precedent for establishing an inferential nexus between a single handgun and defendant's premises without more.

There is, in addition to the total lack of nexus between the gun and defendant's home, another factor here that militates against the validity of the warrant. There was a time lag of sixteen days between the date of the murder and the date of the affidavit. It is contrary to common sense and logic to expect a murderer to keep the murder weapon in his own premises for almost three weeks. Very recently, in *United States v. Salvucci*, 599 F.2d 1094 (1st Cir. 1979), we noted, "the Fourth Amendment requires that the supporting affidavits set forth facts sufficient to allow a neutral magistrate to reasonably conclude that the property sought is located on the premises to be searched *at the time the warrant issues*" (emphasis added). *Id.* at 1096. *See Rosencranz v. United States*, 356 F.2d 310, 314–18 (1st Cir. 1966). We realize, of course, that time is relative and must be measured by the circumstances of each case. *Sgro v. United States*, 287 U.S. 206, 210–11, 53 S.Ct. 138, 77 L.Ed. 260 (1932). In *United States v. Dauphinee*, 538 F.2d 1, 5 (1st Cir. 1976), we stated: "Factors like the nature of the criminal activity under investigation and the nature of what is being sought have a bearing on where the line between stale and fresh information should be drawn in a particular case." A sixteen day lag between the commission of a murder and the issuance of a search warrant for a murder weapon of this type is too long for a finding of probable cause that the gun will still be located on defendant's premises.

For the foregoing reasons, we find the search warrant invalid.

The government contends, however, that, even if the search warrant was invalid, the seizure of the handgun was constitutional because it was incident to a lawful arrest. This issue was raised for the first time on appeal. The entire suppression hearing focused on the validity of the search warrant. At the outset of the hearing, the court asked the Assistant United States Attorney, "So this whole thing, I take it, hinges on the legality of the search." She replied, "Yes, your honor," and later stated, "I think the overall question, your honor, is whether or not based on the warrant—whether or not the information given to the at [*sic*] time clerk of the court was sufficient to provide probable cause for the issuance of the warrant."

The prosecutrix's statements accurately reflected the intent and actions of the police. They sought the warrant specifically to search for "1- Handgun capable of firing a 38 calibre projectile." They did not seize the gun incident to defendant's arrest; they seized it under the presumed authority of the search warrant. The government cannot now change the focus of the case from the validity of the search warrant to a seizure incident to an arrest. This would be contrary to the facts of the seizure and the conduct of the suppression hearing. It would, in fact, be an entirely different case.

*Reversed and remanded.*