**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Thomas James SAVOCA,**
**Defendant-Appellant.**

No. 83–3510.

United States Court of Appeals,
Sixth Circuit.

Argued May 1, 1984.

Submitted Nov. 29, 1984.

Decided May 3, 1985.

Nathaniel R. Jones, Circuit Judge, filed a dissenting opinion.

Carl H. Miller, argued, Painesville, Ohio, for defendant-appellant.

J. Matthew Cain, argued, Asst. U.S. Atty., Randolph Baxter, Cleveland, Ohio, for plaintiff-appellee.

Before JONES and CONTIE, Circuit Judges, and PECK, Senior Circuit Judge.

CONTIE, Circuit Judge.

We have granted the government's petition for rehearing in this case. Our previous opinion, reported at 739 F.2d 220 (6th Cir.1984), reversed the conviction of Thomas Savoca because evidence introduced against him was obtained by means of a search warrant not supported by probable cause. The government's petition for rehearing raises three issues. The first is whether this evidence should be suppressed in light of *United States v. Leon,* — U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), and its companion case, *Massachusetts v. Sheppard,* — U.S. ——, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984). We conclude that this case falls within the good faith exception to the exclusionary rule [1] established in *Leon.*

Insofar as our prior opinion ruled that the district court erred in not suppressing the evidence and ordered the reversal of Savoca's conviction, it is vacated by this opinion.[2] Since we find merit in the first ground advanced in the petition for rehearing, we do not address the government's other arguments.

### I.

The underlying facts in this case may be found in our previous opinion. *See* 739 F.2d at 222–23. We summarized the affidavit in support of the search warrant as follows:

> The affidavit, when read in a common sense and realistic fashion, indicated that (1) FBI agents in Phoenix had just arrested Thomas Savoca and James Carey pursuant to federal arrest warrants for a bank robbery which took place in Austinburg, Ohio at an unspecified prior date, (2) the two suspects had been seen in Room 135 on two prior occasions, and (3) the two suspects were allegedly responsible for several other bank robberies in northeast Ohio and northwest Pennsylvania.

*See id.* at 225.[3] Thus, the affidavit "established only that two persons known to have been involved in several bank robberies were observed on the same premises." *Id.* We held that *United States v. Hatcher,* 473 F.2d 321 (6th Cir.1973), a case involving a similarly terse affidavit, "controls the out-

---

**1.** The term "good faith" exception was typically used to describe the proposed rule before it was recognized in *Leon. See, e.g., Illinois v. Gates,* 462 U.S. 213, 251, 103 S.Ct. 2317, 2339, 76 L.Ed.2d 527 (1983) (White, J., concurring); *Taylor v. Alabama,* 457 U.S. 687, 693, 102 S.Ct. 2664, 2669, 73 L.Ed.2d 314 (1982); *Stone v. Powell,* 428 U.S. 465, 538, 540, 96 S.Ct. 3037, 3072, 3073, 49 L.Ed.2d 1067 (1976) (White, J., dissenting). For the sake of convenience, we will refer to the rule in *Leon* as the "good faith" exception notwithstanding the fact that the Court in *Leon* itself used slightly different terminology, presumably in order to stress the objective nature of the new rule. The *Leon* majority refers to the exception in terms of "reasonable reliance," *see* 104 S.Ct. at 3409, "objective good faith," *see id.* 104 S.Ct. at 3413, 3420, "objectively reasonable" conduct, *see id.* 104 S.Ct. at 3419,

3420, 3421, as well as using the traditional term, "good faith exception," *see id.* 104 S.Ct. at 3416. Thus, although the term "good faith" does not fully capture the objective nature of the inquiry which we must undertake, we will use that term as a "short-hand description." *See United States v. Sager,* 743 F.2d 1261, 1265 (8th Cir.1984), *cert. denied,* — U.S. ——, 105 S.Ct. 1196, 84 L.Ed.2d 341 (1985).

**2.** We adhere to our prior holding that the search was not supported by probable cause. In addition, our prior ruling that rejected Savoca's Speedy Trial Act claim, *see* 18 U.S.C. § 3161 et seq., remains valid. *See Savoca,* 739 F.2d at 223–24.

**3.** For the full text of the affidavit, see 739 F.2d at 222–23.

come of this case." *See* 739 F.2d at 225. The generally permissible inference that bank robbers tend to conceal evidence of their crimes in "places both accessible and private," *see id.* at 226, could not be used to support a determination of probable cause in this case for two reasons. First, the affidavit revealed that the crimes occurred "over 2,000 miles from the motel room." *Id.* Second, and "[m]ore importantly, the affidavit did not specify the amount of time that had passed" since the crimes. *Id.* The state court judge who issued the warrant could not know from what was presented to him in the affidavit whether the crimes occurred "several months ago or several years ago." *Id.* For these reasons we held that probable cause did not support the warrant.

## II.

■ *Leon* held that suppressing evidence is not the inevitable consequence of an illegal search and set forth the circumstances in which the fruits of an illegal search may be admitted into evidence. Since the exclusionary rule is not constitutionally required,[4] courts may limit its scope in order to restrict the rule "to those areas where its remedial objectives are thought most efficaciously served." *United States v. Calandra*, 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974), *quoted in Leon*, 104 S.Ct. at 3413. *See also Illinois v. Gates*, 462 U.S. 213, 257–58, 103 S.Ct. 2317, 2342–43, 76 L.Ed.2d 527 (1983) (White, J., concurring); *Stone v. Powell*, 428 U.S. 465, 539–40, 96 S.Ct. 3037, 3073–74, 49 L.Ed.2d 1067 (1976) (White, J., dissenting). The methodology used to determine the proper scope of the rule was suggested to the *Leon* majority by its prior

cases. *See Leon*, 104 S.Ct. at 3413–16; *Gates*, 462 U.S. at 254–61, 103 S.Ct. at 2340–44 (White, J., concurring). A balancing test is employed to weigh the "costs and benefits" of the rule as it operates in a particular category of cases. *See Leon*, 104 S.Ct. at 3412.

The Court in *Leon* found this balancing to reveal that "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." *Leon*, 104 S.Ct. at 3421. The Court took pains to "emphasize" that the "standard of reasonableness we adopt is an objective one." *Id.* 104 S.Ct. at 3420 n. 20. Subjective beliefs are not to be considered. *Id.* 104 S.Ct. at 3421 n. 23. Rather, the "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.*

By imposing an objective standard, *Leon* indicated that courts evaluating an officer's conduct must charge the officer with a certain minimum level of knowledge of the law's requirements.

> If the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, *or may properly be charged with knowledge,* that the search was unconstitutional under the Fourth Amendment.

*Leon*, 104 S.Ct. at 3419–20 (quoting *United States v. Peltier*, 422 U.S. 531, 542, 95 S.Ct. 2313, 2320, 45 L.Ed.2d 374 (1975)).[5] *See*

---

**4.** There was some doubt about this proposition prior to *Leon*. *See, e.g., Mapp v. Ohio*, 367 U.S. 643, 655–56, 81 S.Ct. 1684, 1691–92, 6 L.Ed.2d 1081 (1961) (the exclusionary rule was said to be "logically and constitutionally necessary"); *Olmstead v. United States*, 277 U.S. 438, 462, 48 S.Ct. 564, 567, 72 L.Ed. 944 (1928). *Leon* has now made it clear, however, that the exclusionary rule merely "operates as 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the person aggrieved.'" *Leon*, 104 S.Ct. at

3412 (quoting *United States v. Calandra*, 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974)).

**5.** Since there is no allegation of subjective bad faith in this case, we need not attempt to reconcile the reference in *Leon's* quotation of *Peltier* to subjective beliefs ("a search should be suppressed only if it can be said that the law enforcement officer *had knowledge* ... that the search was unconstitutional") with the stress that the Court otherwise placed on the objective nature of the inquiry.

*also Leon,* 104 S.Ct. at 3420 n. 20 ("The objective standard we adopt, moreover, requires officers to have a reasonable knowledge of what the law prohibits.").

■ In analyzing the good faith exception, the Court identified three paradigmatic situations in which a search pursuant to a warrant may be held to be illegal. First, if a warrant is based on a knowing or reckless falsehood contained in the supporting affidavit, the warrant is invalid under *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). *See Leon,* 104 S.Ct. at 3417. In this situation, there is necessarily police misconduct which can and ought to be deterred and "[s]uppression ... remains an appropriate remedy." *Id.* 104 S.Ct. at 3421–22. Second, a warrant issued by a magistrate who acts as a mere "rubber stamp for the police," *see Aguilar v. Texas,* 378 U.S. 108, 111, 84 S.Ct. 1509, 1512, 12 L.Ed.2d 723 (1964), or as an "adjunct law enforcement officer," and who thus fails to "manifest that neutrality and detachment demanded of a judicial officer," *see Lo-Ji Sales, Inc. v. New York,* 442 U.S. 319, 326–27, 99 S.Ct. 2319, 2324–25, 60 L.Ed.2d 920 (1979), will be declared invalid. *See Leon,* 104 S.Ct. at 3417. In such a case, "no reasonably well-trained officer should rely on the warrant" and the good faith exception "will ... not apply." *See Leon,* 104 S.Ct. at 3422. Third, if the information contained in the affidavit simply does not add up to probable cause, even after according the proper deference to the magistrate's determination, *see Gates,* 462 U.S. at 236, 103 S.Ct. at 2331, the warrant will be held invalid. *See Leon,* 104 S.Ct. at 3417–18. Where a warrant is held to be invalid due to a simple

error in the determination of probable cause, the evidence should be suppressed *only* if the supporting affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* 104 S.Ct. at 3422 (quoting *Brown v. Illinois,* 422 U.S. 590, 610–11, 95 S.Ct. 2254, 2265–66, 45 L.Ed.2d 416 (1975) (Powell, J., concurring in part)). Similarly, a warrant may have a technical deficiency so that, even though probable cause exists to conduct a search, the particular search authorized by the warrant is illegal because, for example, the place to be searched or the objects to be seized are not particularly described. *See, e.g., Stanford v. Texas,* 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965). Suppression is an appropriate response to such a defect only when the warrant is "so facially deficient ... that the executing officers cannot reasonably presume it to be valid." *See Leon,* 104 S.Ct. at 3422.

### III.

■ In our prior opinion, we found a defect of the third type, involving a simple miscalculation in the probable cause equation. There is neither a proper allegation that the officers lied or recklessly misstated the truth in the warrant application,[6] nor any indication that the issuing judge abandoned his judicial role. The question we must address,[7] therefore, is whether the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," *see* 104 S.Ct. at 3422, or, stated differently, whether a "reasonably well-trained officer would have known that the search was illegal

---

**6.** It was suggested in Savoca's brief to this court that the affidavit's statement that Carey was going for a gun at the time of the arrest was "patently false" and that this falsity "should have been known since the warrant was drawn up after Carey had been shot, and no gun was found on him." This contention is without substance. That no gun was found on Carey's person after he had been wounded did not necessarily mean that no gun was in the motel room. Similarly, Savoca was successful in establishing in the suppression hearing below that the affidavit's statement that both Carey and Savoca had been seen in the motel room on April 19 and 20

was factually incorrect, since the two had been seen in the motel room only on April 20. Savoca has not argued to this court, however, that this misstatement invalidates the warrant and requires a reversal of his conviction.

**7.** We perceive no need to remand this case to the district court. *See United States v. Sager,* 743 F.2d 1261, 1265–66 (8th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1196, 84 L.Ed.2d —— (1985); *United States v. Hendricks,* 743 F.2d 653, 656 (9th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1362, 84 L.Ed.2d 382 (1985).

despite the magistrate's authorization," *see id.* 104 S.Ct. at 3421 n. 23.

As noted above, the defect in the affidavit was that it only tenuously connected the place to be searched with two persons for whom arrest warrants were outstanding. It failed to describe the relationship of the persons to the premises [8] and it did not state how recently the bank robberies had occurred. On these facts, our *Hatcher* decision is controlling on the question of probable cause. Whether a reasonably well-trained officer could believe that this affidavit stated probable cause for the search thus depends in part on whether such an officer would be aware of *Hatcher* and related decisions and the principle for which those cases stand. We conclude that a reasonably well-trained officer would be aware of the principle which *Hatcher* exemplifies; we also conclude, however, that such an officer could conclude that *Hatcher* and related decisions are distinguishable and that the warrant was not, therefore, invalid.

▮▮▮▮ The legal principle recognized in *Hatcher* is that the "existence of probable cause to arrest will not necessarily establish probable cause to search." *See Savoca,* 739 F.2d at 225. We regard this legal principle as well established. In *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the Supreme Court held that a search incident to an arrest must be limited to those areas within the immediate control of the person arrested. All reasonably well-trained officers must be acquainted with this principle. Implicit, if not explicit, in *Chimel* is the rule that "it cannot follow ... simply from the existence of probable cause to believe a suspect guilty, that there is also probable cause to search his residence." *See United States v. Lucarz,* 430 F.2d 1051, 1055 (9th Cir. 1970). Stated differently, "a suspect's mere presence or arrest at a residence is too insignificant a connection with that res-

idence to establish that relationship" necessary to a finding of probable cause. *See United States v. Flores,* 679 F.2d 173, 175 (9th Cir.1982), *cert. denied,* 459 U.S. 1148, 103 S.Ct. 791, 74 L.Ed.2d 996 (1983). "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily,* 436 U.S. 547, 556, 98 S.Ct. 1970, 1976, 56 L.Ed.2d 525 (1978). *See also id.* at 556 n. 6, 98 S.Ct. at 1976 n. 6. Numerous cases, in addition to *Hatcher,* have applied this principle and found affidavits wanting. *See, e.g., United States v. Lockett,* 674 F.2d 843, 845–47 (11th Cir.1982); *United States v. Green,* 634 F.2d 222, 225–26 (5th Cir.1981); *United States v. Charest,* 602 F.2d 1015, 1017–18 (1st Cir.1979); *United States v. Gramlich,* 551 F.2d 1359, 1361–62 (5th Cir.), *cert. denied,* 434 U.S. 866, 98 S.Ct. 201, 54 L.Ed.2d 141 (1977); *United States v. Bailey,* 458 F.2d 408, 409–13 (9th Cir.1972).

The existence of this well-established rule does not, however, preclude a finding of objective good faith in this case. Legal principles do not operate in a vacuum but instead only with reference to particular facts; a reasonably well-trained officer could conclude on the particular facts presented here that the affidavit stated enough information to create probable cause and to remove this case from the operation of precedents such as *Hatcher.*

It is important to bear in mind that "[t]here are so many variables in the probable-cause equation that one determination will seldom be a useful 'precedent' for another." *See Gates,* 462 U.S. at 238 n. 11, 103 S.Ct. at 2332 n. 11. Thus, with only a little effort one may locate cases upholding searches in which the supporting affidavit's connection of the person suspected of a crime with the evidence sought and the

---

**8.** The affidavit did not state, for example, whether the location to be searched was a permanent residence, a transient lodging, or a third party's residence which the two named persons

were merely visiting. Rather, the affidavit merely stated that both suspects "were seen" in the motel room on two occasions.

place to be searched is skeletal. There is little to distinguish these cases from *Hatcher* and the other cases which have ruled such a search illegal. *See, e.g., United States v. Rambis*, 686 F.2d 620, 623–24 (7th Cir.1982); *Flores*, 679 F.2d at 175–76; *United States v. Maestas*, 546 F.2d 1177, 1180 (5th Cir.1977); *United States v. Samson*, 533 F.2d 721, 723 (1st Cir.), *cert. denied*, 429 U.S. 845, 97 S.Ct. 126, 50 L.Ed.2d 116 (1976); *United States v. Spearman*, 532 F.2d 132, 133 (9th Cir.1976); *Lucarz*, 430 F.2d at 1055.

The difference between these two lines of cases can be explained by the rule that whether a sufficient nexus has been shown to a particular location turns in part on the type of crime being investigated, the nature of the things to be seized, the extent of an opportunity to conceal the evidence elsewhere and the normal inferences that may be drawn as to likely hiding places. *See Rambis*, 686 F.2d at 624. Although we continue to believe that these inferences are not available to support probable cause in this case—because the motel room was not connected to Savoca other than his having been "seen" there, because the affidavit did not state when the robberies occurred and because the robberies occurred over halfway across the country—we conclude that a reasonably well-trained officer could have reached the opposite conclusion.[9] The factual gradations in this type of case are often difficult to discern even

after a studied examination of the various judicial opinions. Thus, although a reasonably well-trained officer must recognize the general rule which controls the probable cause determination in this case, we cannot conclude under the particular facts of this case that the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," *see Leon*, 104 S.Ct. at 3422, or that "a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization," *see id.* 104 S.Ct. at 3421 n. 23.[10]

## IV.

Because of our disposition of the issue discussed above we must now address two arguments raised by Savoca which we did not have occasion to discuss in our prior opinion.

First, Savoca argues that the search was illegal because the warrant did not describe the things to be seized with sufficient particularity—an independent fourth amendment violation. We conclude that the warrant's description of the things to be seized, "weapons," "disguises," "U.S. currency" and "fictitious identification," does not present a problem of a "general warrant." General warrants, by failing to describe particularly the things to be seized, create a danger of unlimited discre-

---

9. That is, a reasonably well-trained officer could have concluded that one could infer from the type of evidence sought (especially the money) that it would be retained within the close control of Savoca for a reasonably long period of time. Similarly, from the type of crime alleged and from the series of crimes that were asserted in the affidavit, one might infer in a proper case that Savoca and Carey intended to continue robbing banks and would thus have the instrumentalities of such crimes within their control.

10. Our approach to this case—considering not only how well-established is the general legal principle involved but also how precisely the facts coincide with the cases applying that principle—is suggested by *Leon*. The court of appeals in *Leon* determined that probable cause was lacking due to deficiencies in the affidavit under the *Aguilar-Spinelli* test, *see Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d

723 (1964); *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), *overruled, Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), and the Supreme Court did not disturb this ruling. We do not read the Court's opinion in *Leon* as concluding that a reasonably well-trained officer would not be aware of the dictates of cases so well known as *Aguilar* and *Spinelli*. Rather, the Court found that a reasonably well-trained officer could conclude that the *Aguilar-Spinelli* test did not invalidate the warrant in question. Similarly, we do not hold that a reasonably well-trained officer need not know that the mere presence of a suspect at a particular location does not automatically provide probable cause to search that location; rather, we hold that a reasonably well-trained officer could conclude that the present affidavit was not within the operation of that rule.

tion in the executing officer's determination of what is subject to seizure and a danger that items will be seized when the warrant refers to other items. *See Andresen v. Maryland,* 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976). Because the warrant in this case was *inclusive,* it did not leave room for such discretion; any and all "weapons," "disguises," "U.S. currency" and "fictitious identification" were to be seized. Accordingly, the actual issue is whether there was probable cause to support a search of this breadth, not whether the warrant was "general." *See Worthington v. United States,* 726 F.2d 1089, 1094–95 (6th Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 109, 83 L.Ed.2d 53 (1984) (Contie, J., concurring); *United States v. Christine,* 687 F.2d 749, 752–53 (3d Cir.1982); *In re Lafayette Academy, Inc.,* 610 F.2d 1, 5–6 (1st Cir. 1979). *Compare United States v. Cook,* 657 F.2d 730 (5th Cir.1981) (search warrant authorizing seizure of "illegally obtained films" was an illegal general warrant because it left discretion to the executing officers to determine what films were "illegally obtained").

We have already determined that probable cause did not exist to believe that *any* evidence would be found at the motel room but that a reasonably well-trained officer could have believed otherwise. The slightly different questions presented here are whether probable cause existed to believe that certain *particular* types of evidence would be found in the room and, if not, whether a reasonably well-trained officer could have believed otherwise.

Necessarily, if there was no probable cause to search for any evidence of whatever kind in the motel room, there was no probable cause to search for a particular type of evidence. We conclude, however, that a reasonably well-trained officer could have believed that the warrant supported a search of this breadth. Given the affidavit's statement that "subject CAREY wouldn't be taken alive" and the shooting incident, a reasonably well-trained officer could believe that, if any search were justified, a broad search for "weapons" was

justified. Similarly, given the affidavit's statement that a string of four Ohio and Pennsylvania bank robberies was suspected and that an arrest warrant had been issued, a reasonably well-trained officer could conclude that if there were probable cause to believe that anything would be found in the motel room, probable cause would exist to search for instrumentalities ("weapons" and "disguises"), fruits ("U.S. currency") and materials used in eluding detection while traveling across the country ("fictitious identification"). Accordingly, the breadth of the search authorized by the warrant does not require suppression.

 Finally, Savoca argues that the trial court erred in determining that certain out-of-court statements were admissible pursuant to the co-conspirator's exception to the hearsay rule. *See* Fed.R.Evid. 801(d)(2)(E). In order to bring hearsay statements within the operation of this rule, the government must prove by a preponderance of the evidence that a conspiracy existed, that the defendant against whom the evidence is offered was a member of that conspiracy and that the hearsay statement was made in the course and in furtherance of the conspiracy. *See United States v. Holloway,* 740 F.2d 1373, 1375 (6th Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 440, 83 L.Ed.2d 366 (1984). We have examined the record and the trial court's findings on these questions and we find no error.

### V.

In conclusion, we adhere to the view expressed in our prior opinion that probable cause did not support the search of the motel room but we now conclude that, in light of *Leon,* suppression is not warranted. In light of this holding and our conclusion that Savoca's other claims of error are without merit, the conviction of Thomas Savoca is AFFIRMED.

NATHANIEL R. JONES, Circuit Judge, dissenting.

I agree with the majority that this case involves an incorrect probable cause deter-

mination. I disagree, however, with the majority's characterization of *United States v. Leon*, —— U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). I also disagree that *Leon's* good faith exception may be applied to cure the defect here because the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.

*Leon* established a good faith exception to the exclusionary rule that applies only when an officer's reliance on a subsequently invalidated warrant is in good faith and is objectively reasonable. Our "good faith inquiry is confined to the objectively ascertainable question whether a well-trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* 104 S.Ct. at 3421 & n. 23. The Court stated, however, that in four circumstances a well-trained officer will not have reasonable grounds to believe that the warrant was properly issued. Under the following four exceptions suppression continues to be an appropriate remedy: first, when the affiant provides information that he knows, or should know to be false, *id.* 104 S.Ct. at 3421 (citing *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)); second, when "the issuing magistrate wholly abandon[s] his judicial role in the manner condemned in *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319 [99 S.Ct. 2319, 60 L.Ed.2d 920] (1979)", *id.* 104 S.Ct. at 3422; third, when the warrant is "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable,' " *id.* (*Brown v. Illinois*, 422 U.S. 590, 610–11, 95 S.Ct. 2254, 2265–66, 45 L.Ed.2d 416 (Powell, J., concurring in part)); fourth, when a warrant is "so facially deficient ... that the executing officers cannot reasonably presume it to be valid." *Id.* The majority's discussion of *Leon* fails to set forth clearly all four exceptions.

In applying their reading of *Leon*, the majority finds that a well-trained officer might reasonably have relied on the warrant in this case; therefore, good faith cures the miscalculation of the probable

cause determination and exclusion is inappropriate. (*Supra* at 297). The majority relies upon the statement in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 2332 n. 11, 76 L.Ed.2d 527 (1983), that one probable cause determination "will seldom be a useful 'precedent' for another." *Id.* The majority concludes that because there is some ambiguity legally as to the nexus required to establish probable cause to search a suspect's residence, a reasonably well-trained officer could have believed that the warrant was issued properly in this case. There are two problems with this reasoning. First, taken to its limit, this analysis implies that there are no general probable cause principles that well-trained officers should know. Second, the majority assumes that police officers have the responsibility to distinguish properly among fine gradations of legal precedent in particular factual settings.

Supreme Court authority establishes that a well-trained officer should know general principles of Fourth Amendment law. *See, e.g., Leon*, 104 S.Ct. at 3420 n. 20; *United States v. Peltier*, 422 U.S. 531, 542, 95 S.Ct. 2313, 2320, 45 L.Ed.2d 374 (1975) (officers should be charged with knowledge that certain searches are unconstitutional). The majority cites *Gates* to support the proposition that precedent is not helpful in determining subsequent probable cause. The Court in *Gates* abandoned the "two-pronged test" for probable cause established by *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The passage of *Gates* upon which the majority relies stated that the Court would not apply *Gates* to reconsider the specific probable cause determination in *Spinelli*. *Gates*, 103 S.Ct. at 2332 n. 11. Put in context, this passage conveys that specific probable cause determinations may not be helpful in subsequent cases; the Court does not intend to undermine the precedential value of general principles. More recently, the Court in *Leon* noted that the objective standard "requires officers to have a reason-

able knowledge of what the law prohibits." *Leon,* 104 S.Ct. at 3420 n. 20 (citing *United States v. Peltier,* 422 U.S. 531, 542, 95 S.Ct. 2313, 2320, 45 L.Ed.2d 374 (1975)). Consequently, inquiry in this case should focus on whether the legal principle that establishes that there was not probable cause to support the warrant in this case was sufficiently clear that a reasonable well-trained officer would apply the general principle and know that probable cause was absent. If the principle is clear, then an officer's apparent belief in the validity of a warrant that violates that principle is unreasonable. This remains true even if a court subsequently refines the general principle to address complex factual distinctions.

The governing principle in the present case is that a suspect's mere presence or arrest at a location, without any additional connection to the location that would form an independent reason for a search, will not constitute probable cause to support a warrant to search that location for evidence of a suspected crime. *See Zurcher v. Stanford Daily,* 436 U.S. 547, 556, 98 S.Ct. 1970, 1976, 56 L.Ed.2d 525 (1978); *United States v. Lockett,* 674 F.2d 843, 845–46 (11th Cir.1982); *United States v. Green,* 634 F.2d 222, 225–26 (5th Cir.1981); *United States v. Charest,* 602 F.2d 1015, 1017–18 (1st Cir.1979); *United States v. Gramlich,* 551 F.2d 1359, 1361–62 (5th Cir.), *cert. denied,* 434 U.S. 866, 98 S.Ct. 201, 54 L.Ed.2d 141 (1977); *United States v. Bailey,* 458 F.2d 408, 409–12 (9th Cir.1972); *United States v. Hatcher,* 473 F.2d 321 (6th Cir. 1973). The majority notes that these decisions support this well-known rule. (*Supra* at 297). We initially held that *Hatcher* was dispositive. *Savoca,* 739 F.2d 220, 225 (6th Cir.1984). The majority also notes, however, that warrants have been upheld in several instances where the information connecting evidence to the location to be searched was skeletal. A reasonably well-trained officer, the majority finds, might have considered the warrant in this case valid under these precedents. (*Supra* at 297–298). None of the decisions that the majority cites creates ambiguity; all are in accord with the general principle

that the mere presence of an accused at a location is not sufficient to form probable cause for a search warrant of that place. The cases all involved information directly linking evidence sought to the location to be searched.

The first case involving reliable information directly linking evidence of the alleged crime to the location to be searched was *United States v. Maestas,* 546 F.2d 1177 (5th Cir.1977), which involved a suspect who was charged with passing bad checks. The facts that supported the search warrant for the suspect's home included information that a Chicago print shop had mailed counterfeit checks and materials to her residence. There was a reasonable inference that the materials were kept at the residence. *Id.* at 1180.

The majority cited *United States v. Flores,* 679 F.2d 173 (9th Cir.), *cert. denied,* 459 U.S. 1148, 103 S.Ct. 791, 74 L.Ed.2d 996 (1983), which involved a suspect charged with possession of firearms by a convicted felon. The suspect's roommate had been arrested at their apartment. A workman had called police to inform them that he had seen a number of firearms in a storeroom in the apartment complex. The superintendent said he had allowed the suspect and the roommate to use that storeroom. The court found probable cause to support a search warrant of the storeroom independent of the fact that the suspect's roommate had been arrested in the apartment two weeks earlier on a charge of possession of firearms. *Id.* at 175.

A third case that the majority found ambiguous was *United States v. Rambis,* 686 F.2d 620 (7th Cir.1982). An informant told agents that several suspects were going to blow up a warehouse. During surveillance, the agents watched the suspects purchase what invoices revealed to be gun powder and detonative devices, trailed them to a house, and finally arrested several suspects at the warehouse. The surveillance lasted forty-eight hours. There was reasonable cause to infer that some items not found with the suspects who were at the scene of the crime might be located at the house.

The court stated that the surveillance agents had kept a close watch on the suspects and had seen nothing to indicate that the men stored the materials elsewhere. *Id.* at 624. These inferences were independent of the fact that an additional suspect was arrested at the house. *Id.* at 624–25.

The majority also relied upon *United States v. Samson,* 533 F.2d 721 (1st Cir.), *cert. denied,* 429 U.S. 845, 97 S.Ct. 126, 50 L.Ed.2d 116 (1976). A convicted felon was suspected of receiving firearms in interstate commerce. The court noted that an informant had reason to believe that, after the suspect exhibited the guns for sale, he was returning with them to his apartment. *Id.* at 723. The search warrant was obtained shortly thereafter, and the First Circuit upheld the warrant, stating that these circumstances supported a reasonable inference that the guns were located in the apartment. *Id.*

Finally, the majority found ambiguous *United States v. Spearman,* 532 F.2d 132 (9th Cir.1976). A suspect was charged with possessing stolen mail after the mail and some heroin were found concealed in the bumper of the suspect's automobile. The Ninth Circuit upheld the search, noting that there were extensive observations of the suspect, and that there were circumstances that supported the independent inference that the automobile contained the illegal goods. *Id.* at 133.

A review of the cases which the majority cites confirms that the general principle requiring a nexus between the evidence sought and the place to be searched, in addition to the mere presence of a suspect, is sufficiently clear that a reasonably well-trained police officer should have known that the mere presence of Savoca at the hotel room could not constitute probable cause for a search warrant of the hotel room. First, there was no informant involved who could connect the stolen goods to the room. Second, there was no close time frame that would support an inference that the stolen goods were hidden in the hotel room. Third, the robbery occurred a number of months before Savoca and his alleged accomplice went to the hotel and over 2000 miles from the place where they were arrested. Fourth, the agents only watched the two men enter the room once, without continuing the surveillance to observe whether there was a possibility that they were hiding stolen goods there. Therefore, there was no independent basis of probable cause to search the hotel room other than the fact that the two suspects had entered the room. Because there was no independent basis of probable cause to search the hotel room, and because this requirement is a clear principle that reasonably well-trained officers would know, the warrant was so lacking in indicia of probable cause as to render official belief in its existence unreasonable. This is the third exception to *Leon,* 104 S.Ct. at 3422; therefore, the good faith exception does not apply. The evidence should have been suppressed. On this ground, I dissent.