**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Clarence Carnell GASTON, aka, Chuck,**
**Defendant–Appellant.**

No. 00–5396.

United States Court of Appeals,
Sixth Circuit.

July 24, 2001.

of Kentucky, sitting by designation.

Before BATCHELDER and MOORE Circuit Judges; BERTELSMAN,* District Judge.

BATCHELDER, Circuit Judge.

Clarence C. Gaston ("Gaston") appeals the denial of his motion to suppress cocaine seized pursuant to two search warrants issued by a state-court judge. Gaston contends that the affidavits filed in support of the warrants were insufficient and that the good-faith exception does not apply. We conclude that because the affidavits contain no information regarding the basis of the informants' information, the informants' veracity or any independent corroboration by police, the affidavits are insufficient to support a finding of probable cause. Further, because these are mere bare-bones affidavits, the good-faith exception does not apply. We therefore will REVERSE the denial of Gaston's motion to suppress and REMAND for proceedings consistent with this opinion.

## FACTS

On January 1, 1999, Zachary Achols ("Achols"), Jarvis Jones ("Jones") and Jeffrey Young ("Young") were standing in front of the VIP Club in Union City, Tennessee, when three men walked up to them. One of the three ordered the other two to shoot Young. The two drew their pistols and opened fire. They missed Young, but they hit and killed Achols. Jones and Young witnessed the shooting and later identified three photos from a police photo array as being pictures of the individual who ordered the killing and the two who shot Achols. The Union City Police eventually identified Gaston as the individual who ordered the shooting, and

Miquan Leach ("Leach") and Mario Thomas ("Thomas"), as the shooters.

Fifty-one days after Achols's murder, Captain Perry Barfield ("Barfield") of the Union City police went to General Sessions Judge Morris and applied for two search warrants, one for a trailer and one for a duplex, where the police believed they would find the guns used to kill Achols. Each application was supported by an affidavit that properly described the property to be searched and identified as the items sought "weapons used in the commission of the murder of one Zachary Achols on 1/1/99 at the V.I.P. Club located here in Union City, Union County, TN. Found at the scene were .380 and 9mm shell casings." The only other factual information in the affidavits was this statement, contained in each under the heading "Basis of Knowledge":

> The Affiant believes that Chuck Gaston, Mario Thomas and Miquan Leach has possession of the above described property because the three named individuals were involved in the murder of one Zachery Achols. Gaston giving directions to Thomas Leach to commit the act against one Jeffery Young. All three were positively identified by Mr. Young and other witnesses. Mr. Gaston has control of this residence and Thomas and Leach who are both from Rockford, Illinois, are known to frequent this residence while in Union City. * see attachment

The "attachment" referred to is Officer Barfield's sworn statement that "The information for basis of knowledge was received in a statement from the intended victim Jeffery Young and a witness Jarvis Jones."

Based upon the affidavits and the attachments, Judge Morris issued two search warrants, one for the trailer and one for the duplex. When the police executed the search warrants they found no guns. They did find and seize 347.6 grams of crack cocaine and 342.5 grams of powder cocaine from the trailer, whereupon they arrested Gaston. When police searched the duplex, they seized another 10.9 grams of crack cocaine, resulting in their arrest of Leach.[1]

Gaston was indicted by a federal grand jury on multiple counts of cocaine trafficking. He entered a conditional plea of guilty to two counts of a superseding 12–count indictment, namely, possession with intent to distribute cocaine base (approximately 347.6 grams) and possession with intent to distribute cocaine (approximately 342.5 grams). He reserved his right to appeal the district court's denial of his motion to suppress the drugs seized pursuant to the warrants. He was sentenced and filed this timely appeal.

## I

█ We review for clear error the district court's findings of fact on a motion to suppress; we review de novo that court's legal conclusions about whether those facts provide probable cause. *See United States v. Leake*, 998 F.2d 1359, 1362 (6th Cir.1993). We require independent corroboration by the police of information given by informants when those informants are not known by the police to be reliable. Details of that independent corroboration should appear in the warrant's supporting affidavit. *See United States v. Allen*, 211 F.3d 970, 976 (6th Cir.2000) (en banc) ("[A] caveat is in order. Police should be aware that failure to corroborate all that can easily be corroborated incurs two dangers .... The second

---

**1.** Leach, who pled guilty to one count of the indictment, also filed an appeal. Leach, however, did not challenge the search warrants in the district court. We disposed of Leach's appeal in a separate opinion.

[danger] is to risk the loss, at trial or on appeal, of what has been gained with effort in the field."). We sustain a warrant if "the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing." *Leake,* 998 F.2d at 1363.

On appeal, Gaston argues that the two search warrants are defective because the affidavits provide no basis for any of their information other than an inference that Young and Jones saw Achols's murder. Gaston also contends that the affidavits say nothing about independent corroboration by the police of facts police might have learned from Young and Jones.

Quoting from this court's en banc opinion in *Allen,* the government contends that the affidavits and attachments, given a common sense reading, provided a sufficient basis for the judge's finding of probable cause. But *Allen* does not support the government's contention.

In *Allen* we held that,

"where a known person, named to the magistrate, to whose reliability an officer attests with some detail, states that he has seen a particular crime and particular evidence, in the recent past, a neutral and detached magistrate *may* believe that evidence of a crime will be found .... This holding requires evidence sufficient to provide a basis for that judgment."

*Allen,* 211 F.3d at 976. We also said in *Allen* that "[t]he affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *Id.* at 975.

 In order to be adequate, then, Officer Barfield's affidavit had to contain his attestation, in some detail, of the reliability of Jones and Young, and evidence sufficient to provide a basis for the issuing judge's conclusion that it was probable that evidence of a crime would be found. The affidavits' statements that "All three

were positively identified by Mr. Young and other witnesses," and the further sworn statements that "The information for basis of knowledge was received in a statement from the intended victim Jeffery Young and a witness Jarvis Jones," is not an attestation of the reliability of Young and Jones at all, let alone an attestation in some detail. Even assuming that Young and Jones were actually the source of all of the information in the factual section of the affidavit—an assumption that we think highly suspect, given the record from the suppression hearing and the government's brief on appeal—without some indicia of the reliability of these sources, the affidavits are not adequate to provide a basis for the judge's probable cause findings.

The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.

*Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948). And, "[i]n order for a magistrate to be able to perform his official function, the affidavit must contain adequate supporting facts about the underlying circumstances to show that probable cause exists for the issuance of the warrant." *United States v. Smith,* 182 F.3d 473, 477 (6th Cir.1999) (citing *Whiteley v. Warden,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971)). It is not enough that the police officer have probable cause to believe that the things to be seized may be found in the premises to be searched, or that the police officer present to the magistrate a conclusory statement that probable cause exists; the officer must present to a neutral magistrate

sufficient facts to permit the magistrate to make his own independent judgment that there is probable cause.

We are aware of *Allen*'s admonition that the adequacy of the affidavit is to be judged by what it contains, and not by what it lacks. *See Allen*, 211 F.3d at 975. Where the affidavits are as paltry as those before us here, however, it seems to us that it is helpful to review what is not included in order to put into focus what an adequate affidavit would have contained. Here, the affidavits provided no basis whatsoever for the magistrate to assess independently whether the information provided by Jones and Young, if indeed it was provided by those two individuals, was reliable. Neither the warrants nor their supporting affidavits reveal the source of Jones's or Young's information beyond the fact that they witnessed Achols's killing. Neither warrant states that either Jones or Young actually knew the identity of Gaston, Leach or Thomas; neither affidavit explains the basis for the statement that Gaston "has control" of the described residence or that Leach and Thomas "are known" to reside there when in town. Although there is a section in the middle of the affidavits which is captioned "VERACITY," and which calls for specific information in that regard, no information is provided there or anywhere else in the affidavit about Jones's or Young's veracity. Neither the warrants nor their supporting affidavits say anything about any other investigation by the police involving Gaston, Leach or Thomas, nor do the affidavits contain any indication that the police conducted any independent investigation or made any attempt to corroborate whatever information they did obtain from Jones and Young.

The government urged at the suppression hearing that "[because] this officer has a number of years' experience on the Union City police force, [ ] the court can rely on his representations concerning who controls the residence and who is frequenting the residence." But nothing in the affidavits provided any information about Officer Barfield's experience as a police officer and the record does not reflect that this information was communicated in any other way to the judge who issued this warrant. Before us, the government points to numerous details in its brief and in the Presentence Report that would support a finding of probable cause. These include details about the undercover investigation by the Union City police into a drug ring that included Gaston, Leach and Thomas, called the Rockford Boys; about Officer Barfield's having talked to Gaston's landlords and learning that Gaston controlled the duplex and trailer; about Barfield's being "familiar with Gaston ... because the Union City Police Department was in the midst of an investigation of drug distribution from Gaston's duplex on Home Street;" and about Officer Barfield's independent investigation into Achols's murder. This information may well have provided the Union City police with probable cause to believe that Leach and Thomas were from Rockford, Illinois, that they frequented the trailer and duplex for which the search warrants issued, and that they might have left their weapons there. But none of these details appears in the affidavits, nor is there any basis from the record before us to conclude that this panoply of details was otherwise presented to the state-court judge when Barfield applied for the search warrants. And it was the issuing judge who was required to make the probable cause determination, not the Union City police.

The record in this case suggests to us that all the police got from Jones and Young was their eyewitness identification of Gaston, Leach and Thomas, from an array of photographs, as Achols's killers. It appears that the police connected the dots from there. Had Barfield simply pro-

vided in the supporting affidavit the information that the government now points to as supporting the finding of probable cause, this would be an easy case to affirm. But he did not. Because Barfield's affidavits do not contain evidence sufficient to provide a basis for the issuing judge's finding of probable cause, they are simply not adequate under *Allen.*

Therefore, because on the record before us it does not appear that "the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing," *id.,* we conclude that the warrant cannot be upheld unless it is saved by the good-faith exception—an argument the government relies upon more heavily than it does any defense of the warrants or the supporting affidavits and attachments.

## II

We review *de novo* a district court's ruling on whether the good-faith exception prevents the exclusion of evidence seized under a defective warrant. *See United States v. Van Shutters,* 163 F.3d 331, 336 (6th Cir.1998) ("[T]he court will review *de novo* the district court's conclusions of law, such as whether the 'good faith' exception applies[.]").

■ The "good-faith exception," first recognized by the Supreme Court in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), operates to save from suppression evidence seized by police officers who reasonably relied on a warrant that was issued by a neutral magistrate but later determined to be invalid. There are, however, four exceptions to the good-faith exception, including (1) where the issuing magistrate was misled by an affidavit containing information that the affiant knew was false or as to which he recklessly disregarded the truth; (2) where the issuing magistrate acted as merely a rubber stamp for the police rather than as a neutral and detached judicial officer; (3) where the affidavit in support of the warrant application was nothing more than a "bare bones" affidavit; and (4) where the affidavit supporting the application fails to particularize the place to be searched or the things to be seized. *Id.* at 3421.

Gaston complains that the judge who issued the warrant to search the duplex and the trailer was acting as a rubber-stamp for the police; the warrant and affidavit are so entirely lacking in indicia of probable cause that no reasonable officer could have relied on them; and the affiant intentionally or recklessly misled the judge. We think that as to the second exception claimed. Gaston is correct.[2]

The good-faith exception will not save a warrant that is based upon a "bare bones affidavit." *United States v. Weaver,* 99 F.3d 1372, 1377–78 (6th Cir.1996). A bare-

---

**2.** We do not think that there is any indication here that the issuing judge acted as merely a rubber-stamp for the police in issuing the warrant. The judge was simply in error in concluding that the affidavit provided probable cause. And although we have some concern, particularly after reading the government's brief on appeal and the record of the suppression proceedings, that Officer Barfield could not have believed his statement that "[t]he information for basis of knowledge was received in a statement from the intended victim Jeffery Young and a witness Jarvis Jones," we are not persuaded that he was reckless or that he intended to mislead the issuing judge. Rather, we think it is more likely that Officer Barfield did not recognize that the reader would understand the statement to convey that Young and Jones were the source of the entire factual content of the "Basis of Knowledge" section of the affidavit. And, for the reasons that we have already stated, even if the issuing judge did believe that all of the scant factual information in the affidavit came from Young and Jones, the affidavit was still insufficient to permit him to find probable cause.

bones affidavit is one that "states suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and the basis of knowledge." *Weaver*, 99 F.3d at 1378.[3] The government contends that this warrant was not "bare bones." The government cites *United States v. Van Shutters*, 163 F.3d 331 (6th Cir.1998); *United States v. Schultz*, 14 F.3d 1093 (6th Cir.1994); and *United States v. Savoca*, 761 F.2d 292 (6th Cir.1985), to support its contention that the issuing judge could provide the flesh for the affidavit's bones by relying on Officer Barfield's 20 years' experience as a police officer, and by according a "common sense reading" to the affidavit, which compels the conclusion that Barfield had visited the sites to be searched, given the particularity with which those sites are described in the warrant. Furthermore, the government maintains, the affidavits in *Schultz* and *Savoca*, which were saved by the good-faith exception, contained less information than do the affidavits in this case.

We think the government overstates these cases. In *Van Shutters*, the affidavit contained a quantity of factual information about the suspected criminal activity of the defendant, the items the defendant used to facilitate that activity, and—perhaps most importantly—the fact that the officer seeking the warrant had personal knowledge of that suspected criminal activity. What the affidavit lacked was facts explaining the connection between Van Shutters and the place to be searched. In that context, we made the statement that because of the detailed description of the place to be searched, "a common sense inference is that the affiant visited the premises himself and presumably either observed Shutters in the residence, or determined through investigation that Shutters frequented the premises." *Van Shutters*, 163 F.3d at 337. We noted that the issuing magistrate could take into account the affiant's law enforcement experience—the extent of that experience having been explicitly stated in the affidavit—and we concluded that the fact that this affiant was the executing officer reduced the danger that the wrong premises might be searched.[4] Under all of these circumstances, we said, "only a police officer with extraordinary legal training would have detected any deficiencies in that [warrant]." *Id.*

*United States v. Schultz*, 14 F.3d 1093 (6th Cir.1994), is cited in *Van Shutters* as a case in which the court "has applied the good-faith exception to warrants supported by far less information than that set forth by [the affiant in *Van Shutters*]." *Van Shutters*, 163 F.3d at 338. But in *Schultz*, the point on which there was "far less information" was the nexus between the alleged criminal or his crime and the bank safety deposit box for which the search warrant was issued. Our opinion in *Schultz* recited the facts uncovered by the officer in his investigation and then said that "on the basis of the foregoing, [the officer] obtained ... a warrant to search the safe deposit boxes." *Schultz*, 14 F.3d

---

**3.** *See also Van Shutters*, 163 F.3d at 337 (Citing and quoting *Weaver*).

**4.** It is important to note that in *Van Shutters*, the information missing from the affidavit was the link between the defendant and the premises to be searched. The affidavit in that case included the fact that the affiant had personal knowledge of the investigation into the defendant's activities, and in that context, we noted that the fact that the affiant was also the executing officer reduced the danger that the wrong premises would be searched. *Van Shutters* does not stand for the proposition that where the affiant is also the executing officer, he may rely on his subjective private knowledge in determining whether the warrant demonstrates sufficient indicia of probable cause.

at 1096. That search revealed a quantity of cash in the boxes, and the officer went for a second warrant, of which we said. "The affidavit which supported this second warrant included the information from the first affidavit, plus [the officer's] discovery of the money ... plus his discovery that Apt. 509 was Schultz's residence." *Id.* We held that the affidavit should have included facts demonstrating the material connection between the bank and Schultz's criminal activity, and without that information, the warrant should not have issued; however, we also held that this warrant and affidavit were not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. *Id.* at 1098. As was the case in *Van Shutters,* the affidavit in *Schultz* was full of facts, and was lacking only in one discrete area, which was not sufficient to alert a reasonable officer that it failed to demonstrate probable cause.

Finally, *United States v. Savoca,* 761 F.2d 292 (6th Cir.1985), also cited by the government as a case with "less information" than in the case at hand, is easily distinguishable. Although the affidavit in *Savoca* contained less information than the affidavit in *Van Shutters,* it certainly contained more information than is in the affidavit in the case before us today. And the information lacking in *Savoca* was again the nexus between the targets of the investigation and the place to be searched. There, the subjects were known to be bank robbery suspects, they were found together in a motel room and arrested pursuant to arrest warrants, and all of that information, including background facts about the FBI surveillance of the men, was contained in the affidavit. The defect in the affidavit, we said, was that "it only tenuously connected the place to be searched with two persons for whom arrest warrants were outstanding. It failed to describe the relationship of the persons to the premises and it did not state how

recently the bank robberies had occurred." *Id.* at 297. Again, the affidavit was full of specific facts. It was deficient only with regard to facts that we said a well-trained officer might well not have known were necessary to the determination of probable cause. *See id.*

■ The affidavits presented in the case before us contain no such detail. The paucity of detail is not cured by the government's presenting, either at the suppression hearing or before us on appeal, the facts that Barfield should have presented to the issuing judge. The cases cited by the government do not support the idea that the judge could flesh out the bones by relying on Barfield's years of experience as a police officer when the affidavit did not contain that information. Nor do they support the proposition that in the absence of any facts in the affidavit indicating that the affiant has been involved personally in the investigation, the particularity of the description of the places to be searched necessarily implies that the affiant has some personal familiarity with those places. These affidavits simply fail to provide any "underlying factual circumstances regarding veracity, reliability, and the basis of knowledge." *Weaver,* 99 F.3d at 1378. We therefore hold that these affidavits were "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon,* 468 U.S. at 923. Accordingly, the good faith-exception cannot save the warrants.

For the foregoing reasons, we RE-VERSE the judgment of the district court denying Gaston's motion to suppress. We REMAND this case for further proceedings consistent with this opinion.