**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Thomas James SAVOCA,**
**Defendant-Appellant.**

**No. 83–3510.**

United States Court of Appeals,
Sixth Circuit.

Argued May 1, 1984.

Decided July 17, 1984.

Opinion on Granting of Rehearing
Sept. 20, 1984.

Carl H. Miller (argued), Painesville, Ohio, for defendant-appellant.

J. Matthew Cain (argued), Randolph Baxter, Asst. U.S. Attys., Cleveland, Ohio, for plaintiff-appellee.

Before JONES and CONTIE, Circuit Judges, and PECK, Senior Circuit Judge.

CONTIE, Circuit Judge.

Thomas James Savoca appeals from his conviction by a jury on two counts of bank robbery. 18 U.S.C. § 2113(a) and (d). We hold that the search warrant used to seize incriminating evidence from a motel room occupied by Savoca at the time of his arrest was invalid under this court's ruling in *United States v. Hatcher*, 473 F.2d 321 (6th Cir.1973). We therefore reverse the defendant's conviction and remand this case for a new trial.

**I.**

On June 3, 1981, a single assailant robbed the State Bank and Trust Company in Painesville, Ohio and escaped with almost $99,000. The assailant was armed and wore a rubber mask to conceal his identity. Thereafter, on October 27, 1981, two men robbed the Firestone Bank in Brunswick, Ohio of almost $69,000. These robbers were also armed and also wore rubber masks. Finally, on January 13, 1982, three armed assailants robbed the Andover Bank in Austinburg, Ohio and escaped with almost $146,000. Like the two previous robberies, these men wore rubber masks to hide their identity.

The ensuing FBI investigation resulted in the issuance of federal arrest warrants which charged Savoca and an accomplice, James Carey, with the Andover Bank robbery. These warrants were issued on April 19, 1982, or approximately three months after the robbery. Prior to the issuance of the arrest warrants, FBI agents discovered that Savoca and his wife were living in Phoenix, Arizona. Armed with this information, FBI agents in Phoenix conducted a series of "spot checks" of Savoca's residence to determine if the residence was

occupied and to identify any vehicles in the driveway. The agents also staked out room 135 at the Arizona Ranch House Inn after one agent followed a vehicle from Savoca's residence to that address. The room was registered under the name of George Goodson, but one agent recognized that name as an alias used by James Carey. At approximately 12:30 p.m. on April 20, 1982, several agents saw a small white station wagon pull up in front of room 136. Two men exited the vehicle and proceeded immediately into room 135. At this point, the agents knew of the outstanding arrest warrants for Savoca and Carey and thus the agents formulated an arrest plan. Shortly thereafter, Savoca and Carey exited room 135 and were placed under arrest. The record also indicates that Carey was shot when he attempted to re-enter the motel room.

Following the arrests, the agents secured a search warrant which authorized a search of the motel room for "weapons, disguises, U.S. currency, and ficticious identification." [1] The supporting affidavit reads as follows:

Affiant learned from James Cornett, F.B.I. Agent, that Federal Bureau of Investigation Agents of the Phoenix, Arizona Office were at 5600 North Central, ARIZONA RANCH HOUSE INN, Room 135, conducting a surveillance on two known bank robbery suspects, identified as JAMES GERMIS CAREY, W/M 10-4-32, and THOMAS JAMES SAVOCA, W/M 2-10-52. Both subjects had outstanding Federal warrants, charging them with Bank Robbery, out of Austinburg, Ohio. They both were seen in Room 135, April 19 and 20, 1982.

At approximately 12:48 p.m., SUBJECT THOMAS J. SAVOLA [sic] exited Room 135 and was getting into the 1982 Buick, Ohio plates, BLU–212, when subject was taken into custody by Federal Bureau of Investigation Agents. The second subject, JAMES CAREY, started back into Room 135 and was shot by Steve Che-

1. The warrant also authorized a search of a 1982 maroon Buick which was parked in front

of Room 135. The record does not indicate whether any evidence was seized from the car.

noweth, F.B.I. Agent, who believed he was going for a weapon. Both subjects were taken into custody by Federal Bureau of Investigation Agents at 5600 North Central.

Both subjects, JAMES G. CAREY and THOMAS J. SAVOCA, are responsible for approximately four (4) bank robberies in Northeastern Ohio and Northwestern Pennsylvania. Information was that subject CAREY wouldn't be taken alive.

The search of the motel room resulted in the seizure of, *inter alia,* several handguns, several pieces of false identification, and several plastic masks. This evidence was introduced against Savoca at trial. Savoca was later convicted by a jury on two counts of bank robbery. 18 U.S.C. § 2113(a) and (d). Defendant appeals.

## II.

The defendant initially contends that he was denied his statutory right to a speedy trial under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*[2] The Speedy Trial Act requires that a defendant be tried within 70 days from the filing date of the information or indictment, or from the date the defendant first appears before a judicial officer of the court in which the charge is pending, whichever occurs later. 18 U.S.C. § 3161(c)(1). The computation of this 70-day limit is subject to excludable delay attributable to motions practice as well as other particularized delays set out in § 3161(h)(1)–(7). In addition, § 3161(h)(8)(A) provides that the court may exclude any period of delay resulting from a continuance granted by the judge on his own motion or at the request of either party "if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action

outweigh the best interest of the public and the defendant in a speedy trial." These findings must, however, be set forth in the record. 18 U.S.C. § 3161(h)(8)(A). In the present case, the defendant was arraigned on May 12, 1982. Trial commenced on April 28, 1983, or 351 days after arraignment. The issue, therefore, is whether at least 281 of those days are properly excludable under the Act.

On May 12, the date of defendant's arraignment, the government filed a motion to obtain hair samples from the defendant. This motion was granted by the court without a hearing on June 14, 1982. The disposition of this motion was, in our opinion, "prompt" within the meaning of 18 U.S.C. § 3161(h)(1)(F),[3] and thus the delay caused by this motion is properly excludable. During the pendency of the government's motion, the defendant on June 2 filed several motions, including a motion for reduction of bond with a request for an oral hearing. The hearing was held on June 23 and the motion was later denied on July 21. The time period from the filing of this motion through the conclusion of the June 23 hearing is clearly excludable under § 3161(h)(1)(F), *United States v. Richmond,* 735 F.2d 208, 213 (6th Cir. 1984); *United States v. Campbell,* 706 F.2d 1138, 1143 (11th Cir.1983), and the time period from the conclusion of the June 23 hearing through the date of the ruling is also excludable under § 3161(h)(1)(J).[4] *Richmond,* at 213. Accordingly, the entire 71-day period from May 12 to July 21 is properly excludable.

Following the court's disposition of defendant's motion to reduce bond, eight nonexcludable days passed. On July 30,

---

**2.** Although we are reversing the defendant's conviction and ordering a new trial based upon his fourth amendment claim, we must address his Speedy Trial Act claim since the sanction for violation of the Act is dismissal of the indictment rather than simply a new trial. *See* 18 U.S.C. § 3162(a)(2).

**3.** Section 3161(h)(1)(F) provides for the exclusion of "delay resulting from any pretrial motion, from the filing of the motion through the

conclusion of the hearing on, *or other prompt disposition of,* such motion." (Emphasis added).

**4.** Section 3161(h)(1)(J) provides for the exclusion of "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court."

1982, defense counsel filed a motion for leave to withdraw. Substitute counsel did not, however, notify the trial court of his appearance as counsel until August 2. This resulted in four more excludable days. 18 U.S.C. § 3161(h)(1)(F). Forty-eight nonexcludable days then passed until September 20, when the defendant filed his motion to dismiss the indictment under the Speedy Trial Act. After one more excludable day, 18 U.S.C. § 3161(h)(1)(F), the district court on September 22 ordered a continuance on its own motion pursuant to 18 U.S.C. § 3161(h)(8)(A). This continuance remained in effect until the commencement of trial on April 28, 1983.

■ Upon careful consideration, we hold that the delay caused by this continuance is excludable under § 3161(h)(8)(A). When granting an "ends of justice" continuance under § 3161(h)(8)(A), the court must consider, *inter alia*, whether the failure to grant the continuance "would be likely to make a continuation of such proceeding impossible." 18 U.S.C. § 3161(h)(8)(B)(i). In this case, the district judge stated in his written order that he had suffered a heart attack on July 25, 1982 and that he had undergone quadruple by-pass surgery the following day. The judge also indicated that he was incapacitated and that he was under the strict care of a cardiologist. Illness of the trial judge was clearly intended to be considered in determining whether the failure to grant a continuance would make "continuation of [the] proceeding impossible." 18 U.S.C. § 3161(h)(8)(B)(i); *Richmond*, at 216; *United States v. Nance*, 666 F.2d 353, 358 n. 11 (9th Cir.), *cert. denied*, 456 U.S. 918, 102 S.Ct. 1776, 72 L.Ed.2d 179 (1982). *See also* S.Rep. No. 1021, 93d Cong., 2d Sess. 40 (1974) (Senate Report identifies illness of presiding judge as sufficient reason to grant "ends of justice" continuance).

■ According to our calculations, 8 nonexcludable days passed from July 21 to July 30 and an additional 48 nonexcludable days passed from August 2 to September 20. Since the total number of nonexcludable days is less than 70, we hold that no violation of the Speedy Trial Act occurred.

### III.

Savoca also contends that the search warrant is invalid because the supporting affidavit did not establish probable cause to believe that evidence of a crime would be found in the motel room. We agree.

■ "The rule of probable cause is a practical, non-technical conception affording the best compromise that has been found for accommodating ... often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice." *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949). It is well settled that an affidavit supporting a search warrant need not establish beyond a reasonable doubt that incriminating evidence will be found at the place to be searched. *Illinois v. Gates*, 462 U.S. 213, ——, 103 S.Ct. 2317, 2330, 76 L.Ed.2d 527 (1983). Indeed, in its most recent pronouncement on the interpretation of affidavits for search warrants, the Supreme Court held that "so long as the magistrate had a 'substantial basis for ... conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Gates*, 462 U.S. at ——, 103 S.Ct. at 2331 (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)). This does not mean that reviewing courts should rubber stamp a magistrate's finding of probable cause. It does, however, require the application of a common sense standard with "doubtful or marginal cases" being "largely determined by the preference to be accorded to warrants." *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). In this context, the Supreme Court has emphasized that our "after-the-fact scrutiny" of a magistrate's finding of probable cause should not take the form of *de novo* review. *Gates*, 462 U.S. at ——, 103 S.Ct. at 2331. Instead, the magistrate's finding "should be paid great deference by reviewing courts." *Id.* Such a rule reflects a desire to encourage use of the warrant process by law enforcement officers. *Ventresca*, 380 U.S. at 108, 85 S.Ct. at 745.

■ We must also bear in mind, however, that search warrants are directed against evidence of crime and not persons. The fact that there is probable cause to arrest a person for a crime does not automatically give police probable cause to search his residence or other area in which he has been observed for evidence of that crime. *See United States v. Freeman*, 685 F.2d 942, 949 (5th Cir.1982); *United States*

v. *Lucarz,* 430 F.2d 1051, 1055 (9th Cir. 1970). If the rule were otherwise, "there would be no reason to distinguish search warrants from arrest warrants and cases like *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), would make little sense." *Lucarz,* 430 F.2d at 1055.

In *United States v. Hatcher,* 473 F.2d 321 (6th Cir.1973), this circuit recognized the aforementioned rule that the existence of probable cause to arrest will not necessarily establish probable cause to search. In *Hatcher,* federal agents arrested James P. Craven pursuant to a valid arrest warrant at 1146 Laidlaw Avenue in Cincinnati, Ohio. Following a brief search of the premises for other persons, the agents secured a search warrant which authorized a search of the house for "guns, money and narcotic drugs." The supporting affidavit stated that (1) the affiant had observed a "known narcotics trafficker" leaving the residence shortly before Craven's arrest, (2) the affiant had just arrested Craven pursuant to a bench warrant which had been issued following Craven's indictment for several violations of federal narcotics laws, (3) the agents had discovered a .38 caliber revolver on Craven's person and a .22 caliber pistol in the bedroom, and (4) the defendant, "a known trafficker of narcotic drugs whom this agent has previously arrested on April 30, 1971 for unlawful possession of drugs," was also on the premises at the time of Craven's arrest. The ensuing search resulted in the seizure of a large quantity of narcotics which was later admitted into evidence against Hatcher. Hatcher was later convicted on two counts of unlawful possession of a controlled substance. 21 U.S.C. § 844(a).

On appeal, this circuit reversed the defendant's conviction and ruled that the information set forth in the affidavit failed to establish probable cause to search the premises. The court first pointed out that the presence of two loaded guns in the house did not form a basis for issuing the warrant because the affidavit contained no suggestion that the occupants were violating any state or federal laws by keeping the guns in the house. The court then discounted the remaining information contained in the affidavit as follows:

*The mere fact that two persons known to have been engaged in trafficking in narcotics were observed on the same premises cannot justify a search of the premises without something more.* In this case there was nothing more except the presence of two loaded guns which, absent any allegation of unlawful possession, would form no basis for any search or the issuance of a search warrant.

*Hatcher,* 473 F.2d at 323 (emphasis added).

We hold that the *Hatcher* decision controls the outcome of this case. The affidavit, when read in a common sense and realistic fashion, indicated that (1) FBI agents in Phoenix had just arrested Thomas Savoca and James Carey pursuant to federal arrest warrants for a bank robbery which took place in Austinburg, Ohio at an unspecified prior date, (2) the two suspects had been seen in Room 135 on two prior occasions, and (3) the two suspects were allegedly responsible for several other bank robberies in northeast Ohio and northwest Pennsylvania. The affidavit thus established only that two persons known to have been involved in several bank robberies were observed on the same premises. *Hatcher,* 473 F.2d at 323.

The Government's contention that the affidavit created probable cause to search the motel room is premised upon the inference that "known bank robbers" tend to conceal fruits and instrumentalities of crime in places which are both accessible and private. Although one could reasonably infer from the affidavit that one or both of the suspects were staying in Room 135, the fact remains that the bank robberies occurred over 2,000 miles from the motel room. More importantly, the affidavit did not specify the amount of time which had passed between the bank robberies and the issuance of the warrant. As such, the magistrate could not know from reading the affidavit whether the bank robberies had occurred several months ago or several years ago. We conclude that this affidavit establishes no more than a "bare suspicion" that incriminating evidence would be found in the motel room, *Brinegar,* 338 U.S. at 175, 69 S.Ct. at 1310, and that the defendant's motion to suppress should have been granted.

Accordingly, the judgment of the district court is REVERSED and the case is REMANDED for a new trial.

## ORDER

This case is before the court on the motion of the Appellee, the United States of

America, for rehearing pursuant to Federal Rule of Appellate Procedure 40. The petition raises three grounds for rehearing:

1. that the good faith exception to the exclusionary rule as announced in *United States v. Leon*, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), and *Massachusetts v. Sheppard*, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984), renders suppression an inappropriate remedy in this case;

2. that suppression is unwarranted in this case under the inevitable discovery exception to the exclusionary rule as announced in *Nix v. Williams*, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); and,

3. that the evidence seized pursuant to the warrant was admissible to impeach defense witness James Carey.

Upon considering the record and the authorities cited in the petition, the court is of the opinion that rehearing should be granted. The parties shall file briefs addressing the issues presented by the rehearing petition by September 27, 1984.