UNITED STATES of America, Plaintiff,

v.

Jon SWAGGERTY, Defendant.

No. Crim. 97–81237.

United States District Court,
E.D. Michigan,
Southern Division.

July 16, 1998.

Kelvin W. Scott, Asst. U.S. Atty., Detroit, MI, for Plaintiff.

James D. O'Connell, Highland Park, MI, for Defendant.

### OPINION AND ORDER

FEIKENS, District Judge.

### 1. FACTS

The Drug Enforcement Agency and the Detroit Police Department were investigating brothers Keenan and Keon Wells' relationship, if any, to the shooting deaths of four Detroit residents. The shootings were precipitated by disputes between the Wells brothers' "Seven Mile Dogs" gang and a neighboring rival gang. These gangs engaged in a number of fights and other retaliatory attacks, which culminated in the four shooting deaths between April and August of 1997.

Defendant Jon Swaggerty allegedly belongs to the "Seven Mile Dogs" gang and is a close associate of Keenan Wells. Swaggerty resides at 19351 Biltmore in Detroit with his mother and other relatives. As part of the criminal investigation, the Detroit Police obtained a warrant to search 19351 Biltmore for "any guns or ammunition, [p]roof of residence for Keenan Wells, [and p]roof of residence for Keon Wells." On October 9, 1997, 19351 Biltmore was searched pursuant to the warrant. Law enforcement officers found crack cocaine lying on the nightstand in Swaggerty's bedroom. Under his mattress, they found two 9–millimeter handguns similar to the weapons used in the shooting deaths. Swaggerty was arrested and charged with possession with the intent to distribute cocaine and possession of firearms based on the seized evidence.

He has filed a motion to suppress the gun and drug evidence taken from his home contending that the search violated the Fourth Amendment's provision against unreasonable searches and seizures.

### 2. ANALYSIS

A. Validity of the Warrant

In order to obtain suppression of the evidence against him, Swaggerty must show that the warrant authorizing the search of his home was invalid. In order to issue a valid warrant, a judicial officer examines the

affidavit on which the warrant is based and the "totality of the circumstances" stated to determine if the affidavit shows "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In reviewing the issuance of a warrant, a federal judge must pay "great deference" to the state judge's finding of probable cause. *Id.* 462 U.S. at 236, 103 S.Ct. 2317.

■ Even with great deference, I cannot find probable cause to support the October 9, warrant authorizing the search of Swaggerty's home. The affiant is a Detroit police officer who wrote ten numbered paragraphs to support the affidavit. The first eight of these paragraphs describe in detail the four shooting deaths, the role in which the Wells brothers are believed to have played in these deaths, and the eyewitnesses and victims who have identified the Wells brothers as the perpetrators. The ninth paragraph asserts that all police and Secretary of State records show the Wells brothers as residing at an address different from 19351 Biltmore. The tenth paragraph states:

10. On October 7, 1997, affiant and members of the "[ ] TASK FORCE," in an effort to locate and arrest KEENAN WELLS, [sic] information was developed which indicated that KEENAN WELLS could be located at 19351 Biltmore, city of Detroit. At that location, the "Task Force" observed KEENAN WELLS exiting the Biltmore address, and made a positive visual identification. However, they were unable to make an apprehension at that time.

■ A nexus between the crime and the location to be searched must exist in order for a warrant to be constitutionally valid. A search of property merely because it is "owned, rented, or otherwise used by a criminal suspect [is] just the type of broad warrant the Fourth Amendment was designed to foreclose." *United States v. Schultz,* 14 F.3d 1093, 1098 (6th Cir.1994). I find the only evidence linking 19351 Biltmore to criminal activity is the fact that Keenan Wells, a criminal suspect, was spotted at that location. *Schultz* makes clear that the mere fact a

suspect makes use of or is present at a location is insufficient to justify searching it.

So the warrant is invalid.

**B. Good Faith Test**

But finding a warrant invalid is only one hurdle a defendant must meet before a motion to suppress is granted. Swaggerty also needs to show that the "good faith" doctrine does not apply.

In *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Supreme Court explained that suppression of evidence is not required by the Fourth Amendment. *Id.* 468 U.S. at 906, 104 S.Ct. 3405. Suppression is "designed to deter police misconduct." *Id.* 468 U.S. at 916, 104 S.Ct. 3405. When a law enforcement officer conducts a search in good faith, reliance on a warrant approved by a neutral member of the judiciary, the police have done nothing wrong. Suppressing the seized evidence thus fails to deter future police misconduct. Judicial compliance to the probable cause standard is not encouraged by suppression because "there exists no evidence suggesting judges or magistrates are inclined to ignore or subvert the Fourth Amendment or that lawlessness among these actors requires application of the extreme sanction of exclusion." *Id.* 468 U.S. at 916, 104 S.Ct. 3405. The general rule adopted in *Leon* is that evidence seized under a warrant issued by a neutral judicial officer is admissible during the prosecution's case-in-chief even if there is a later finding that the judicial officer erred in issuing the warrant. This is the good faith doctrine.

*Leon* describes four situations that are exceptions to the good faith doctrine. If one of these situations exists, evidence seized in a search under an invalid warrant is excluded from the prosecution's case-in-chief. The first of these situations occurs when the magistrate is "misled by information in an affidavit that the affiant knew was false or would have known was false except for this reckless disregard of the truth." *Id.* 468 U.S. at 923, 104 S.Ct. 3405. The second situation is where the magistrate abandons his judicial role by acting as a mere "rubber stamp" for the police. Third, is when an affidavit is "so

lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" requires suppression. *Id.* 468 U.S. at 923, 104 S.Ct. 3405. Finally, suppression occurs where the warrant is so facially deficient that the police cannot presume it valid because it fails "to particularize the place to be searched or the things to be seized." *Id.* 468 U.S. at 923, 104 S.Ct. 3405.

As to these four situations, the first, second, and fourth are clearly not at issue. Nothing indicates the police lied in the affidavit and no evidence suggests the state judge acted as a "rubber stamp" by failing to give this matter proper consideration. The warrant clearly states the address of the house to be searched and gives a particularized description of the items to be seized. Thus, three of the four exceptions do not apply to this case.

Swaggerty must therefore satisfy the third exception to the good faith doctrine to succeed on his motion to suppress. This requires a showing that the affidavit was so lacking in an indicia of probable cause that a reasonable police officer could not in good faith have relied on the warrant. Determinations of probable cause and good faith are fact-intensive questions depending on so many different variables that "one determination will seldom be a useful 'precedent' for another." *Gates,* 462 U.S. at 239, n. 11, 103 S.Ct. 2317. With this caveat in mind, turn now to the relevant caselaw for guidance.

In *United States v. Savoca,* 739 F.2d 220 (6th Cir.1984), reh'g 761 F.2d 292 (6th Cir. 1985), the defendants robbed two banks in Ohio, and then fled to Phoenix, Arizona. FBI agents soon located them in Phoenix and discovered that the defendants used a nearby motel room to meet with their associates. Agents arrested the defendants at the close of one of these meetings. Following the arrests, the agents obtained a warrant to search the motel room for weapons, disguises, U.S. currency, and fictitious identification. The affidavit supporting the warrant stated: 1) the defendants were arrested under a flight warrant for bank robberies committed in Ohio, 2) federal agents had seen the defendants in the motel room on two prior occasions, and 3) the defendants allegedly robbed other banks in Ohio and Pennsylvania. *Id.* 739 F.2d at 225. The search of the motel

room led to the seizure of handguns, fake identification, and plastic masks. *Id.* 739 F.2d at 223. The United States Court of Appeals for the Sixth Circuit held the warrant invalid because it failed to establish probable cause and ordered the seized evidence suppressed at trial. *Id.* 739 F.2d at 225. The Supreme Court then issued its *Leon* decision. This caused the Sixth Circuit to rehear *Savoca* and rule that suppression was unnecessary under the newly enunciated good faith doctrine. *United States v. Savoca* 761 F.2d 292, 299 (6th Cir.1985). *Savoca* stated that the type of evidence being sought, especially the large sums of stolen money, was exactly the kind that a criminal would keep within his immediate control. Additionally, the fact that the defendants were suspected of committing a series of robberies leads to the inference that the instrumentalities of the crime would be kept close at hand in case the opportunity to attempt another robbery arose. *Savoca,* 761 F.2d at n. 9. Thus, the type of evidence sought and the fact that a series of crimes was involved created the necessary indicia of probable cause needed to admit the seized evidence under the good faith doctrine.

A second relevant case is *United States v. Schultz,* 14 F.3d 1093 (6th Cir.1994). In *Schultz,* police officers independently verified information obtained from an informant regarding the defendant's address, phone number, and use of an ice cream business as a "front" for a drug operation. Through the investigation, police discovered that the defendant owned a safety deposit box. A warrant to search the safety deposit box issued based on the affiant's statement that the defendant was a drug dealer and that the affiant's "training and experience" told him that "that it is not uncommon for the records, etc. of such [drug] distribution to be maintained in bank safe deposit boxes." *Id.* 14 F.3d at 1097. Search of the safety deposit box revealed $41,840 in U.S. currency. The Court of Appeals for the Sixth Circuit held that the warrant violated the Fourth Amendment because it authorized the search of defendant's property merely because he was a criminal suspect. Suppression of the evidence was not required, however, under the good faith doctrine because an indicia of probable cause could be found in the officer's

"training and experience" which suggested that evidence of the drug operation would be found in the safety deposit box.

 In light of *Savoca* and *Schultz,* I turn now to the question of whether the facts in this case give rise to the indicia of probable cause necessary to admit the seized evidence under the good faith doctrine. As in *Savoca,* an indicia of probable cause arises from the fact that the Wells brothers were believed to have been involved in a series of crimes. It is reasonable for the police to have believed that Keenan Wells would keep his weapons within his close control so that he would be armed in the event another gang fight broke out. Thus, Wells' presence at the 19351 Biltmore address created an inference that he would have a stash of weapons at this location. Additionally, a reasonable inference of probable cause arises out of the officer's experience that gang members store weapons in their homes. While the affidavit in question never specifically refers to the officer's training and experience, the police may have noticed a pattern indicating where gang members in general, or the "Seven Mile Dogs" in particular, hid their weapons. Following *Schultz,* the police's experience with this pattern created the indicia of probable cause necessary to satisfy *Leon.*

In this case, too, the police were faced with the daunting task of apprehending the perpetrators of four murders within a five-month period. Time to parse out the fine gradations of probable cause was simply lacking in the quest to catch the responsible parties. By submitting a sworn affidavit to a judicial officer, the police followed the constitutionally mandated protocols. *Leon* makes clear that as long as the police have an indicia of probable cause they can in good faith rely on the warrant.

I find that there exists an indicia of probable cause from which an objective police officer could in good faith have *reasonably believed* that probable cause existed. Therefore the good faith doctrine applies, and I deny Swaggerty's motion to suppress.

IT IS SO ORDERED.