**UNITED STATES of America,**

v.

**Dennis WASHINGTON
and Ebony Brown.**

**Case No. CR2–03–009.**

United States District Court,
S.D. Ohio,
Eastern Division.

June 6, 2003.

Kevin W. Kelley, United States Attorney, Columbus, OH, for Plaintiff.

Lou Williams, Lewis E. Williams Co., LPA, Columbus, OH, for Dennis Washington, defendant.

Boyd Binning, Columbus, OH, for Ebony Brown, defendant.

## ORDER AND OPINION

MARBLEY, District Judge.

### I. Introduction

This matter is before the Court on Defendant Ebony Brown's Motion to Suppress and Defendant Dennis Washington's

Motion to Suppress filed February 28, 2003. For the following reasons, Defendants' Motions to Suppress are **GRANTED**.

## II. Facts

On October 11, 2002, officers with the Columbus Division of Police Narcotics Bureau (the "Narcotics Bureau") executed a search warrant at 3112 Crossgate Road, a single family residence in Columbus, Ohio. The search warrant, which was issued on October 9, 2002, authorized the officers to search for certain documents supporting violations of Ohio's drug trafficking laws. The officers entered and secured the house and immediately noticed a package containing what they suspected to be a half kilogram of cocaine. The officers also saw crack cocaine residue on the kitchen counter top, an electric mixer, and a microwave oven.

Based on the evidence of cocaine they found in the house, the narcotics detectives sought a second warrant to search for cocaine, drug paraphernalia, weapons, and other contraband associated with drug trafficking. The second search warrant issued on the afternoon of October 11, 2002, and the officers then conducted a more thorough search of the house at 3112 Crossgate Road.

The first search warrant was supported by a four-page affidavit signed by Detective Michael Johnson of the Narcotics Bureau. The affidavit detailed the investigation that led the Narcotics Bureau detectives to believe that 3112 Crossgate Road was the site of a drug trafficking operation.

Narcotics Bureau detectives conducted two undercover "buys" of crack cocaine from an "unwitting," one who unknowingly provides information to police in an investigation. Detective Johnson arranged the first buy on October 1, 2002. He met with the unwitting who agreed to sell him crack cocaine. The unwitting made a series of phone calls to his supplier and arranged a meeting at Atcheson Street and Champion Avenue.

Detective Johnson drove the unwitting to the designated meeting place where Detective Johnson gave him recorded funds to purchase crack cocaine. Shortly, an African–American man driving a blue Cadillac parked next to Detective Johnson. The unwitting exited Detective Johnson's car and entered the passenger side of the blue Cadillac. Inside, the unwitting and the driver of the blue Cadillac engaged in a conversation and some physical interaction. The unwitting eventually returned to Detective Johnson's vehicle, and the blue Cadillac drove away. The unwitting produced a bag of crack cocaine and weighed a portion for Detective Johnson. Narcotics Bureau officers later conducted a field test on the crack cocaine and determined that it was real. The detectives also recorded the license plate number of the blue Cadillac and determined that the car was registered to Ebony Brown at 3112 Crossgate Road, Columbus, Ohio. Based on this information, detectives began surveillance of 3112 Crossgate Road.

On October 5, 2002, Detective Johnson arranged another buy with the unwitting. When the unwitting telephoned his supplier, the supplier informed him that he would be delayed because he was waiting for a ride to pick up his Cadillac from the repair shop. Shortly thereafter, detectives conducting surveillance of 3112 Crossgate Road saw a blue Chevrolet Blazer arrive at 3112 Crossgate Road and pickup an African–American man wearing a tan hooded jacket and tan pants. Detectives followed the Blazer to Columbus Car Audio at Livingston Avenue and Brice Road, where the man wearing a tan jacket and tan pants entered a blue Cadillac with the

same license plate number as the one used in the buy on October 1.

Detectives continued to follow the man driving the blue Cadillac. Meanwhile, the unwitting received a call from his supplier who told him to meet him at the Burger King restaurant on Brice Road south of Livingston Avenue. Shortly thereafter, the blue Cadillac arrived at the Burger King on Brice Road, where Detective Johnson and the unwitting met it. Just like during the first buy, the unwitting accepted money from Detective Johnson, entered the blue Cadillac, had a discussion with the driver, and then returned with crack cocaine. Detective Johnson recognized the driver of the blue Cadillac as the same man who was driving that car during the first buy. Once again, a field test on the crack cocaine yielded a positive result.

Detective Johnson was unable to identify the driver of the blue Cadillac. He later observed the blue Cadillac at 3112 Crossgate Road at 8:30 A.M. on both October 8, 2002 and October 9, 2002. In addition to all of these facts, Detective Johnson also swore in his affidavit that based on his experience as a Narcotics Bureau detective, he knows that those involved in drug trafficking commonly keep certain records and documents as well as large sums of money in their residences. Furthermore, Detective Johnson learned that an armed robbery had occurred at 3112 Crossgate Road on August 16, 2002, which indicated to him that the house was the likely site of drug trafficking because such robberies typically target the large sums of money associated with drug trafficking.

### III. Analysis

Defendants Ebony Brown and Dennis Washington ask the Court to exclude all evidence discovered during the searches of 3112 Crossgate Road on October 11, 2002. First, Defendants contend that the first search warrant, which issued on October 9, 2002, was invalid because the affidavit supporting the search warrant lacked evidence of probable cause and because the good faith exception to the exclusionary rule does not apply in this case. Second, Defendants maintain that even if the search warrant was valid, the detectives executing the search warrant failed to knock and announce before forcibly entering the house at 3112 Crossgate Road, and even if they did knock and announce, they did not wait a reasonable amount of time before forcibly entering the home. Third, Defendants contend that the information contained in the affidavit supporting the search warrant was too stale. Fourth, Defendants conclude that the second search warrant, which authorized a search for drugs and drug-related paraphernalia, is invalid under the "tainted fruit of the poisonous tree" doctrine.

### A. Probable Cause

Defendants contend that the first search warrant, which issued on October 9, 2002, lacked probable cause. They argue that the affidavit supporting the search warrant failed to show a nexus between 3112 Crossgate Road and any criminal activity. Defendants also maintain that the search warrant was based on a "bare bones" affidavit containing merely conclusory statements.

The Fourth Amendment requires that warrants issue only "upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The determination of whether probable cause exists for a particular search requires consideration of "the totality of the circumstances." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The magistrate issuing a search warrant must "make a practical,

common-sense decision whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* Probable cause to search a residence does not automatically follow from probable cause to arrest an occupant of that residence. *United States v. Savoca,* 739 F.2d 220, 224 (6th Cir.1984). The affidavit accompanying a search warrant must set forth detailed facts supporting the warrant. *United States v. Weaver,* 99 F.3d 1372, 1378 (6th Cir.1996).

Relying on *Savoca,* Defendants argue that the affidavit of Detective Johnson was insufficient because it failed to establish a nexus between 3112 Crossgate Road and any criminal activity. In *Savoca,* the Sixth Circuit found that a search warrant was invalid where it was supported only by an affidavit that established that two people suspected of bank robberies had been seen in a motel room. *Savoca,* 739 F.2d at 225. The court concluded that the affidavit in *Savoca* failed to create a nexus between known criminal conduct and the motel room that was the subject of the search warrant because there was no reason to believe that the motel room contained evidence from the bank robberies. *Id.*

■ In this case, undercover detectives witnessed the suspect leave the target residence shortly after speaking with the unwitting about a drug transaction. The detectives then followed the suspect to the scene where Detective Johnson witnessed the unwitting purchase drugs from the suspect. The fact that the suspect was seen leaving 3112 Crossgate Road, however, does not create probable cause to search the residence. Just because the suspect drove a blue Cadillac that was registered to a woman who lived at 3112 Crossgate Road does not mean that the suspect lived at 3112 Crossgate Road or

that he operated a drug business from that residence. During their surveillance of 3112 Crossgate Road, Narcotics Bureau detectives never observed any evidence of drug activity at the home.

Although in some circumstances probable cause may exist to search the home of a person suspected of drug trafficking even if police only witness transactions away from the residence, *see United States v. Miggins,* 302 F.3d 384, 393–94 (6th Cir. 2002), in this case, the detectives had no evidence that the suspect lived at 3112 Crossgate Road. In fact, Detective Johnson could not determine the suspect's identity, much less where he lived. Detectives saw the suspect leave 3112 Crossgate Road once, and they twice observed him driving a car registered to a third party with an address of 3112 Crossgate Road. This evidence is not enough to connect the suspect with the house or establish probable cause to search the house for evidence of drug trafficking. Had detectives continued surveillance of 3112 Crossgate Road and observed the suspect routinely departing the house en route to sell drugs, they may have established probable cause for a search warrant. But in this case, the Narcotics Bureau detectives only observed the suspect leave 3112 Crossgate Road one time.

■ Defendants also contend that Detective Johnson's affidavit contained insufficient detail to support the search warrant for 3112 Crossgate Road. Defendants rely on *United States v. Weaver,* 99 F.3d 1372 (6th Cir.1996) and *United States v. Leake,* 998 F.2d 1359 (6th Cir.1993). Both *Weaver* and *Leake* address the requirements for a confidential tip to form the basis of evidence supporting a search warrant. In *Weaver,* a confidential informant gave police a tip about a marijuana sales operation. The informant identified the defendant's house as the location of a marijuana

purchase and suspected marijuana growing operation. *Weaver*, 99 F.3d at 1375. To support the search warrant of the defendant's home, police used an affidavit "based almost entirely on hearsay information supplied by a previously reliable confidential informant." *Id.* at 1377. Although the confidential informant had been previously reliable, the court found that the affidavit contained insufficient underlying facts to support the informant's tip, and therefore, the court found the search warrant invalid. *Id.* at 1378.

Similarly, in *Leake*, the court considered an affidavit that stated that an anonymous caller had given police a tip that a house where the caller had done some work smelled like marijuana and had packages of marijuana in it. *Leake*, 998 F.2d at 1361. The court considered the requirements for an anonymous tip to support a search warrant under *Gates'* totality of the circumstances test. *Id.* at 1365. The court concluded that the search warrant was invalid because the search warrant contained insufficient richness of detail and police had not sufficiently corroborated the informant's allegations. *Id.*

Although Detective Johnson did not rely on information from confidential informants in this case, *Weaver* and *Leake* are relevant because they establish that police must rely on more than suspicion as the basis for a valid search warrant. The search warrant in this case may have contained more facts than the warrants in *Weaver* and *Leake*, but few of those facts had any relevance to 3112 Crossgate Road. The only evidence linking illegal conduct with 3112 Crossgate Road was the fact that police saw the suspect at the house one time and saw him twice driving a car that was registered to a third party with an address of 3112 Crossgate Road. Otherwise, Detective Johnson relied on mere suspicions to link 3112 Crossgate Road

with illegal conduct. For example, Detective Johnson stated that in his experience drug dealers attempt to conceal their identity and register their cars in the names of other people. Further, Detective Johnson stated that a robbery had occurred recently at 3112 Crossgate Road, which could mean that the house contained large sums of cash in connection with drug trafficking. But these statements are mere suspicions. They are not based on Detective Johnson's own observations or the observations of any Narcotics Bureau officer. Furthermore, although Detective Johnson's affidavit does contain additional detail about the Narcotics Bureau's surveillance of the suspect and Detective Johnson's two undercover buys, these additional details do not link 3112 Crossgate Road with illegal conduct. Therefore, although the affidavit in total contains more detail than those in *Weaver* and *Leake*, the affidavit is nevertheless a "bare bones" affidavit with respect to the detail that would be required to create probable cause to search 3112 Crossgate Road.

Therefore, the Court finds that the search warrant issued on October 9, 2002 lacked probable cause.

## B. Good Faith Exception

■ The Government argues that even if the October 9, 2002 search warrant lacked probable cause, the good faith exception to the exclusionary rule applies in this case, *see United States v. Leon*, 468 U.S. 897 (1984), and therefore, evidence found during execution of the search warrant should not be suppressed. Under *Leon*, evidence obtained during execution of a search warrant that is subsequently deemed invalid will not be excluded if the police officers executing the warrant acted in good faith reliance on a warrant issued by a judge or magistrate. *Id.* at 921–22, 104 S.Ct. 3405. The Supreme Court listed

four situations, however, when the good faith exception will not apply: (1) where the warrant's supporting affidavit contains information the affiant knew or should have known to be false; (2) where the "issuing magistrate wholly abandoned his judicial role;" (3) where no reasonable police officer could have believed that the warrant was supported by probable cause despite the magistrate's issuance of the warrant; and (4) where the warrant is so facially deficient "that the executing officers cannot reasonably presume it to be valid." *Id.* at 923, 104 S.Ct. 3405. In this case, Defendants argue that the second and third of these conditions bar application of the good faith exception.

First, Defendants argue that the judge who issued the search warrant in this case abandoned his role because the warrant was not supported by sufficient evidence. *Leon* sets forth a high bar for the kind of wholesale abandonment of the judicial role required for the good faith exception not to apply in a particular situation. *See Leon,* 468 U.S. at 923, 104 S.Ct. 3405 (citing *Lo–Ji Sales, Inc. v. New York,* 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979), for the kind of abandonment of the judicial role that is required). In *Lo–Ji Sales,* for example, the Court found that a Town Justice had completely abandoned his judicial role when he became a member of a search party and essentially assumed a significant role in a police operation. *Lo–Ji Sales, Inc. v. New York,* 442 U.S. 319, 327, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979). Likewise, the good faith exception does not apply where police rely on a search warrant issued by a retired judge who no longer possesses authority to issue warrants. *United States v. Scott,* 260 F.3d 512, 515 (6th Cir.2001). In this case, Defendants do not present evidence that the judge who issued the search warrant for 3112 Crossgate Road on October 9, 2002,

abandoned his judicial role in such a way as required to abrogate the good faith exception to the exclusionary rule.

Second, Defendants contend that although the Narcotics Bureau officers obtained a search warrant, no reasonable officer could have believed that they had probable cause to search 3112 Crossgate Road. The good faith exception will not apply if the Narcotics Bureau officers "could not have harbored an objectively reasonable belief in the existence of probable cause." *Leon,* 468 U.S. at 926, 104 S.Ct. 3405. Furthermore, one officer cannot obtain a search warrant based on an inadequate affidavit and then rely on the ignorance of other officers to execute the warrant that an informed officer would know lacked probable cause. *Id.* at 923 n. 24, 99 S.Ct. 2319.

In *Leake,* the court refused to apply the good faith exception because the officer who conducted surveillance of the suspect's home observed nothing out of the ordinary and relied only on the tip from a confidential informant in obtaining a search warrant. 998 F.2d at 1367. The court determined that the officer should have known that additional evidence of wrongdoing was required to create probable cause to search the house. *Id.* Likewise, in *Weaver,* the court found that the good faith exception did not apply where police officers reasonably should have known that additional corroboration of information from a confidential informant was necessary to create probable cause. 99 F.3d at 1380–81. In *Weaver,* the officers had not personally observed any wrongdoing at the target residence. *Id.* at 1380; *see also United States v. Baxter,* 889 F.2d 731, 734 (6th Cir.1989) (finding that good faith exception does not apply where officers rely on a "bare bones" affidavit).

In this case, a reasonable police officer should have known that the evi-

dence linking 3112 Crossgate Road to criminal activity was insufficient to create probable cause to search the residence. Although the Narcotics Bureau officers conducted a fairly substantial investigation, they never gained enough information to link 3112 Crossgate Road to criminal conduct. All they knew was that the suspect was seen leaving the house one time and that he twice drove a car registered to someone who lived at 3112 Crossgate Road. No reasonable officer should have believed that this evidence created probable cause to search 3112 Crossgate Road. *See United States v. Helton,* 314 F.3d 812, 825 (6th Cir.2003) (finding good faith exception inapplicable where police should have known that additional corroboration of facts was required for probable cause to support a warrant). Furthermore, Detective Johnson was unable to determine the suspect's identity or where he lived. Although Detective Johnson had arranged for another undercover buy from the suspect, the officers chose to seek a search warrant before completing that buy. At one time the officers apparently thought they should continue their investigation, but ultimately, they sought the search warrant when they should have known that additional evidence was required to create probable cause to search 3112 Crossgate Road.

Therefore, the Court finds that the good faith exception to the exclusionary rule is not applicable in this case.

### C. Failure to Knock and Announce and Staleness

Defendants argue that the Narcotics Bureau detectives failed to knock and announce their presence at 3112 Crossgate Road before forcibly entering the home to execute the first search warrant. Furthermore, Defendants allege that even if the detectives did knock and announce their arrival, they did not wait a reason-able period of time for someone inside the residence to open the door. Defendants also argue that the information contained in the affidavit supporting the first search warrant for 3112 Crossgate Road was too stale to support the search warrant.

Because the Court finds that the search warrant lacked probable cause and the good faith exception does not apply in this case, the Court need not consider Defendants' additional arguments for suppression based on the knock-and-announce rule and staleness.

### D. The Second Search Warrant and the Fruit of the Poisonous Tree Doctrine

Defendants ask the Court to rule that the second search warrant, which was issued and executed on October 11, 2002, was invalid because it was based on evidence found while executing the first search warrant, which lacked probable cause. Defendants base this argument to exclude on the tainted fruit of the poisonous tree doctrine. *See Wong Sun v. United States,* 371 U.S. 471, 484, 83 S.Ct. 407, 9 L.Ed.2d 441 (noting that "fruits" of an unlawful search must be excluded because "[t]he exclusionary prohibition extends as well to the indirect as the direct products of [unlawful] invasions").

The affidavit attached to the second search warrant states that when the Narcotics Bureau officers executed the first search warrant, they saw evidence of crack cocaine inside the house at 3112 Crossgate Road. This evidence, however, was the fruit of an invalid search warrant and is therefore incapable of supporting the second search warrant. *See United States v. Hearn,* 496 F.2d 236, 244 (6th Cir.1974) ("[I]nformation gained by law enforcement officers during an illegal search cannot be used in a derivative manner to obtain other evidence ....."); *see also Silverthorne Lumber Co. v. United States,* 251 U.S. 385,

392, 40 S.Ct. 182, 64 L.Ed. 319 (1920) ("The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all."). Therefore, the Court finds that the second search warrant was invalid and all evidence obtained during execution of the second search warrant must be suppressed because it was the fruit of the poisonous tree.

### V. Conclusion

For the foregoing reasons, Defendant Ebony Brown's Motion to Suppress and Defendant Dennis Washington's Motion to Suppress are **GRANTED.** All evidence obtained during execution of the two search warrants at 3112 Crossgate Road on October 11, 2002, is **SUPPRESSED.**

**IT IS SO ORDERED.**